Martha GRAHAM

v.

**FEDERAL EXPRESS CORPORATION.**

**Civ. No. 89–2006.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Nov. 17, 1989.

Robert S. Blatt, Mark Ford, Fort Smith, Ark., for plaintiff.

Robert M. Honea, Hardin, Jesson & Dawson, Fort Smith, Ark., for defendant.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This case originated in the Circuit Court of Crawford County, Arkansas. Plaintiff

alleged her former employer, Federal Express Corporation, had failed to pay disability benefits under the Wage Continuation Plan for the employees of Federal Express. Plaintiff claimed to be entitled to future benefits because of her complete and total disability by reason of injuries sustained on July 8, 1984. Additionally, the complaint requested a 12% statutory penalty and attorney's fee award pursuant to Ark.Code Ann. § 23–79–208 (1987).

On January 20, 1989, defendant filed a petition for removal pursuant to 28 U.S.C. § 1441. In its petition for removal, the defendant stated the claims asserted by plaintiff and remedies available arise under and are governed exclusively by 29 U.S.C. § 1001 *et seq.*, the Employee Retirement Income Security Act of 1974 (ERISA). After correspondence regarding the applicability of ERISA, the parties now agree that the long-term disability plan at issue is an "employee welfare benefit plan" governed by ERISA. *See* 29 U.S.C. § 1002(1). Accordingly, what appeared at first blush to be a relatively straightforward contract claim has now become intermeshed with significant ERISA issues.

*Background*

Plaintiff began working for the Federal Express Corporation on October 2, 1980. During the course of her employment she became a "covered employee" and a "participant" under Federal Express' Wage Continuation Plan.[1]

On July 8, 1984, plaintiff sustained an on-the-job injury to her back. Plaintiff pursued a claim for worker's compensation benefits and hearings were held on her claim on May 9, 1985, and June 17, 1985. The worker's compensation administrative law judge (ALJ) in an opinion dated April 21, 1986, found plaintiff to be 70% permanently partially disabled. The ALJ's opinion was affirmed by the Arkansas Worker's Compensation Commission. On December 17, 1986, the parties settled the worker's compensation claim by a joint petition to the Commission.

In addition to worker's compensation, plaintiff applied for social security disability benefits. In connection with her application, plaintiff was referred to a medical examiner on or about February 27, 1985. In an opinion dated July 29, 1985, the social security administrative law judge awarded plaintiff total disability benefits.

Plaintiff began receiving disability benefits under Federal Express' Wage Continuation Plan in August, 1984. Initially, plaintiff received short-term disability benefits. On November 17, 1984, she began receiving long-term disability benefits for her total occupational disability.

Under the plan total occupational disability is defined to mean "the inability of a participant to perform substantially all of the duties of his employment with the company by reason of any medically determined physical or mental impairment...." Defendant's Exhibit "A", *Wage Continuation Plan for the Employees of Federal Express Corporation* (hereinafter Plan) at 1.31. Payment of benefits for total occupational disability terminates after two years, or in plaintiff's case on November 17, 1986. Defendant's Exhibit "A", *Plan* at 4.1(a). Long-term disability means the "inability to engage in any gainful activity (for which the participant is reasonably fitted by education; training, or experience) by reason of any medically determined physical or mental impairment...." Defendant's Exhibit "A" *Plan* at 1.20. Long-term disability payments terminate when the participant attains the age of sixty (60) years or the condition of long-term disability ceases to exist. Defendant's Exhibit "A", *Plan* at 4.1(b)(ii).

On August 27, 1986, the third-party plan administrator, Thomas L. Jacobs & Associates, Inc., wrote Ms. Graham advising her that the definition of disability changes after two years, and that after November 17, 1986, she must be considered unable to

---

1. The plan at issue is self-administered by Federal Express. Day to day administration of the plan is delegated to several Federal Express managers. Ministerial functions, such as arranging medical exams and corresponding with plan participants are handled by Thomas L. Jacobs & Associates, Inc. Defendant's Exhibits "F" and "G".

perform the duties of any occupation for her benefits to continue. The letter further advised her that a review of her claim was being conducted and additional information was needed. Defendant's Exhibit "D–1".

On November 6, 1986, Federal Express' administrator wrote plaintiff to advise her that a medical exam was necessary "to confirm the presence of continuing disability." A medical exam had been set up for Ms. Graham with Dr. Davis. Ms. Graham apparently did not attend the scheduled independent medical examination on the advice of her worker's compensation counsel. Nor did Ms. Graham or anyone acting on her behalf contact Federal Express. Defendant's Exhibit "D–5".

On December 8, 1986, the administrator sent Ms. Graham a copy of the November 6, letter, with a typewritten note at the bottom advising plaintiff that her benefits would be suspended pending further rescheduling of another appointment with Dr. Davis, and requesting her to reschedule as soon as possible.

On February 10, 1987, the administrator wrote to Ms. Graham again and advised her a medical exam had been scheduled for her. The letter set forth the time and place of the exam. The letter further advised that Federal Express would pay for the exam, and that if Ms. Graham failed to appear her benefits would terminate. Ms. Graham took no action. Subsequently, on April 20, 1987, Ms. Graham was advised by letter that her long-term disability benefit claim was being terminated because of her failure to attend the two medical exams arranged for her and her failure to reschedule them. Defendant's Exhibits "D–14" and "E". Ms. Graham was further advised:

> If you disagree with our determination, you may file a request for a review. Your written request must be filed within 60 days of your receipt of this correspondence and must include documentation in support of your position which

has not been previously submitted. Your request for review must be addressed to Ms. Janet Quinn of Federal Express Corporation located at 4009 Airways, Memphis, TN 38116.

*Id.* No finding was made regarding her medical disability under the long-term disability plan after her initial two-year period.

On May 9, 1988, over a year after her benefits were terminated, Ms. Graham contacted Federal Express regarding her benefits. She was advised that her case had been terminated. *See* Defendant's Exhibit "D–16", Letter dated May 12, 1988, confirming the phone conversation of May 9, 1988. Subsequently, on July 28, 1988, Federal Express was contacted by Ms. Graham's attorney, Mark Ford, in regard to her claim. Federal Express' attorney, Donald Maliniak, responded to this letter on August 11, 1988, stating that Ms. Graham's benefits were officially terminated on November 1, 1987, because of her failure to submit to an independent medical exam despite repeated requests.[2] Moreover, it was noted Ms. Graham failed to utilize the internal administrative procedures available under the plan. Defendant's Exhibits "D–17" and "D–18".

Thereafter, Mr. Ford requested an independent medical examination to determine the presence of continued disability. This request was denied by letter dated October 13, 1988. It was Federal Express' opinion that:

> [A]n IME now would be futile inasmuch as the IME could only assess Ms. Graham's current medical condition or at best, speculate about her late 1986—early 1987 medical condition. In short, Federal Express needed to have Ms. Graham medically examined in late 1986—early 1987 so it could properly assess whether or not Ms. Graham was sufficiently (and objectively) disabled *at that time.* Only then could we have continued disability payments to her.

2. It is not clear from the record before the court what this letter means when it says plaintiff's benefits were "officially terminated" on November 1, 1987. As previously noted, plaintiff's benefits were terminated on April 20, 1987. *See* Defendant's Exhibits "D–14" and "E".

Defendant's Exhibit "D–20". The letter further reiterated the reason for the termination of benefits.

Following this exchange of correspondence suit was filed. After removal to this court, an administrative stay was entered to allow plaintiff to exhaust the plan's administrative review procedures. To accomplish this, plaintiff submitted a request for administrative review. Defendant's Exhibit "D–21". Ms. Graham's request for claim review and plan remedy exhaustion was denied for the following reasons:

1. Her failure to attend two (2) separate Independent Medical Examinations ("IME's") arranged by Federal Express in 1987, in violation of PLAN requirements.

2. Her failure to reschedule either of the two (2) separate IME's arranged by Federal Express in 1987, in violation of PLAN requirements.

3. Her failure in 1987 to provide proof of disability, in violation of PLAN requirements.

4. Her failure in 1987 to cooperate in furnishing information necessary to determine whether a disability existed, in violation of PLAN requirements.

5. Her failure to request a review of the decision to terminate her disability claim, in violation of PLAN requirements.

6. Federal Express' ability to determine whether a disability existed at relevant times was and continues to be unfairly and detrimentally prejudiced by the above actions of Ms. Graham.

Defendant's Exhibit "D–22". This decision was affirmed by Federal Express' Benefit Appeal Committee. Defendant's Exhibit "D–23".

It is Federal Express' position that Ms. Graham is procedurally barred from pursuing benefits under the plan. It is contended that Ms. Graham was properly advised of her ERISA rights and that her claim is barred because of her failure to attend an independent medical examination and her failure to request a timely review of the termination of her benefits. The parties have provided the court with the record necessary to resolve the threshold issue of whether plaintiff is procedurally barred and have now had the opportunity to brief the issue.

*Standard of Review*

Initially, the court must determine the applicable standard of review. In *Firestone Tire & Rubber Co. v. Bruch,* — U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court was faced with the issue of the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations. The court initially pointed out that "ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B)." *Firestone,* 109 S.Ct. at 953. The court further noted that "to fill this gap, federal courts have adopted the arbitrary and capricious standard...." *Id.* The court then "explicated a new "trust law" based standard...." *Lakey v. Remington Arms Co., Inc.,* 874 F.2d 541, 543 (8th Cir.1989).

"After pointing out that 'trust law makes a deferential standard appropriate when a trustee exercises discretionary powers,' the court concluded that because Firestone possessed 'no powers to construe uncertain terms,' it was not entitled to the deference inherent in the arbitrary and capricious standard." *Lakey,* 874 F.2d at 544, quoting *Bruch,* 109 S.Ct. at 956. The court then concluded that "a denial of benefits challenged under § 1132(a)(1)(b) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch,* 109 S.Ct. at 956.

■ Thus, the appropriate standard of review is dependent on whether the plan fiduciary has been vested with discretionary authority. It necessarily follows that "the threshold issue in an analysis of benefit determinations by fiduciaries or plan administrators under ERISA is whether the fiduciary or plan administrator had discretionary power to construe uncertain terms in the benefit plan." *Lakey* 874 F.2d at 544.

As the Court noted, absent a clear grant of discretion to the fiduciary, application of the highly deferential arbitrary and capricious standard of review does not promote the goals of ERISA. *Bruch,* 109 S.Ct. at 955–56. "If the plan does 'not give the employer or administrator discretionary or final authority to construe uncertain terms'", a reviewing court should review the employee's claims as it would "any other contract claim." *Wallace v. Firestone Tire & Rubber Co.,* 882 F.2d 1327, 1329 (8th Cir.1989), quoting *Bruch,* 109 S.Ct. at 955.

Defendant contends the arbitrary and capricious standard is proper because the plan gives it discretion in interpreting and construing the plan. In support, defendant refers the court to the following plan provision:

> 5.5 *Duties of the Committee.* The Committee shall administer the Plan and adopt such rules and regulations as in the opinion of the Committee are necessary or advisable to implement and administer the Plan and to transact its business. In addition to this general administrative power, the Committee shall have such other powers as may be necessary to perform its duties hereunder, including, without limiting the generality of the foregoing, the power to: (i) *interpret and construe the Plan; and (ii) determine within the terms of the Plan all questions of (A) eligibility,* (B) the costs of the Plan, (C) the amount of contributions to be made to the Trust in each Fiscal Year, (D) participation, (E) value of benefits, and (F) similarly related matters for the purposes of the Plan.

Defendant's Exhibit "A" § 5.5 (emphasis added). In this quoted section, the defendant perceives a grant of discretionary authority.

Since the *Bruch* decision, the courts have been endeavoring to determine "how specific plan language must be in order to constitute a grant of discretionary authority as contemplated by the Supreme Court in *Bruch." Baxter v. Lynn,* 886 F.2d 182 (8th Cir.1989). *See, e.g., Baxter v. Lynn,* 886 F.2d 182 (8th Cir.1989) (Provision that

"the trustees have the final authority to determine all matters of eligibility for the payment of claims" merely describes the trustees' mandatory role in accepting or rejecting claims); *Wallace v. Firestone Tire & Rubber Co.,* 882 F.2d 1327 (8th Cir.1989) (plan provisions giving trustees the right to change policy terms and instructing employees to consult personnel representatives for clarification of policy terms did not constitute a grant of additional discretion to interpret terms of the plan); *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 38–39 (11th Cir.1989) (finding requisite grant of discretionary authority where plan stated "full and exclusive authority to determine all questions of coverage and eligibility" as well as "full power to construe the provisions of [the] Trust" belonged to trustees); *Batchelor v. Int'l Broth. of Elec. Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441, 443 (5th Cir.1989) (grant of discretion found when plan stated "full and exclusive authority to determine all questions of coverage and eligibility ... [and] full power to construe the provisions" of the plan belonged to trustees); *Lakey v. Remington Arms Co., Inc.* 874 F.2d 541, 544 (8th Cir.1989) (provision of severance pay plan allowing employer to "interpret the more usual situations that may arise in the application of the policy" constituted grant of discretionary authority to interpret ambiguous plan terms); *Burnham v. Guardian Life Ins. Co. of America,* 873 F.2d 486, 489 (1st Cir.1989) (*de novo* review applied to decision of trustees to deny benefits because trustees had no discretion to interpret meaning of "full-time employee"); *Boyd v. Trustees of United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989) (plan provision giving trustees authority to make "full and final determinations as to all issues concerning eligibility for benefits" constituted grant of discretionary authority reviewable under arbitrary and capricious standard); *Bali v. Blue Cross and Blue Shield Ass'n,* 873 F.2d 1043, 1047 (7th Cir.1989) (plan language giving administrator discretion to request additional information from employee to prove disability limited judicial

review of such a request to arbitrary and capricious standard).

Each case, of course, turns on the express language in the ERISA plan before the court.

> There are obviously no magic words required to trigger the application of one or another standard of judicial review. In this setting, it instead need only appear on the face of the plan documents that the fiduciary has been 'given [the] power to construe disputed or doubtful terms'—or to resolve disputes over benefits eligibility—in which case the trustee's interpretation will not be disturbed if reasonable.

*DeNobel v. Vitro Corporation*, 885 F.2d 1180 (4th Cir.1989) quoting *Bruch*, 109 S.Ct. at 954. Reviewing courts have not always agreed on the proper construction of plan documents. *See, e.g., DeNobel, supra*, at n.. 4.

▆▆▆ After having reviewed the plan language in light of the authority discussed above, the court concludes the *de novo* standard of review is applicable in this instance. The Supreme Court in *Bruch* indicated the *de novo* standard of review is generally applicable; it is only when the plan expressly grants the fiduciary discretionary authority that the deferential standard of review is appropriate. A grant of discretionary authority must be found in the express language of the plan and will not be implied. To do otherwise, would result in finding such authority existent in nearly every ERISA plan. This was clearly not the intent of the Supreme Court as expressed in *Bruch*. Thus, the court is thrust into the difficult task of determining where the line is to be drawn between a mere delegation of fiduciary duty and the grant of discretionary authority.

After reviewing the relevant provision, the court concludes the language of the plan does not explicitly give the fiduciary discretionary authority to construe "doubtful terms" as opposed to the ability to define terms as a part of the overall benefit determination. Instead, the committee is directed to determine "within the terms of the Plan all questions of (A) eligibility...." The defendant correctly notes that the plan gives it the responsibility of determining and, if appropriate, denying benefits; however, in every plan some fiduciary has been delegated this responsibility. Thus, this factual scenario is present in every suit resulting from a denial of benefits. 29 U.S.C. § 1132(a)(1)(B). The *Bruch* exception, however, is applicable only if the plan grants power in addition to the initial ability of the fiduciary to grant or deny benefits based on the terms of the plan. No such additional power is granted to the fiduciary in the plan before the court. The court believes this decision is consistent with *Bruch*.

*Discussion*

Plaintiff acknowledges that she was provided written notification on three occasions of defendant's demand that she attend an independent medical examination (hereinafter IME). The November and December, 1986, contacts were made while her worker's compensation case was being negotiated. As a result, she was advised by her counsel not to attend the IME.[3] Following the settlement of the compensation claim, plaintiff states she mistakenly believed that the worker's compensation settlement concluded all claims she had resulting from the July 8, 1984, injury, including her claim for long-term disability benefits. Thus, plaintiff ignored the February, 1987, letter requesting an IME and further disregarded the April 20, 1987, letter discussed, *supra.*

Plaintiff does not dispute the administrators authority to request an IME to deter-

---

**3.** During this period of time plaintiff was apparently entitled to worker's compensation benefits, and long-term disability benefits for total occupational disability. In addition, plaintiff had been awarded Social Security Disability Benefits. The eligibility standards for each type of disability are, of course, different. Plaintiff's worker's compensation counsel apparently did not realize that the worker's compensation benefits were separate and distinct from the benefits available under the Wage Continuation Plan. Although certain benefits must be off-set under the terms of the Plan, this is a separate issue from that of entitlement in the first instance. *See* Defendant's Exhibit "A", Plan at 4.3(b).

mine whether plaintiff meets the standards for participation under the plan. Defendant's Exhibit "A", *Wage Continuation Plan for the Employees of Federal Express Corporation* at § 5.9. Plaintiff initially contends the 1984 Personal Statement of Full–Time Employee Benefits attached to her brief as Exhibit "A" was deficient in that it did not provide the information required by 29 U.S.C. § 1022(b). *See also* 29 C.F.R. § 2520.102–3. Specifically, plaintiff contends it failed to advise her that she must attend an IME to be eligible for benefits; nor did it advise her of the available review procedures. Section 1022(b)'s requirements are only applicable to plan and summary plan descriptions. As defendant has pointed out the 1984 Personal Statement is neither; rather, it is merely an annual personalized statement showing the employee the value of his or her benefits. If the employees have any questions regarding the materials in this statement they are directed to refer to *Your Employee Benefits Book i.e.,* the summary plan description, or contact the Employee Benefits Department. Plaintiff's Brief, Exhibit "A".

The main thrust of plaintiff's argument is that despite her failure to attend the IME, the defendant had sufficient medical evidence and other information on which to evaluate plaintiff's entitlement to long-term disability benefits. Specifically, plaintiff states the defendant had all of plaintiff's medical information which was introduced during the course of the worker's compensation case; plus, defendant was aware of the Social Security award. The standards of disability are, of course, different in each situation. *Helms v. Monsanto Co.,* 728 F.2d 1416, 1421 n. 6 (11th Cir.1984).

At this point rather than examining the underlying reason for the termination, the court will turn to the exhaustion of remedies issue. Plaintiff urges the court to review her claim on the merits and argues she has exhausted her administrative remedies.

█Exhaustion of remedies is not statutorily required. *DePina v. General Dynamics Corp,* 674 F.Supp. 46, 49 (D.Mass. 1987). However, courts have generally regarded exhaustion as a jurisdictional prerequisite. *See, e.g., Lee v. Prudential Ins. Co. of America,* 673 F.Supp. 998 (N.D.Cal. 1987); *Mahan v. Reynolds Metals Co.,* 569 F.Supp. 482 (E.D.Ark.1983), *aff'd,* 739 F.2d 388 (8th Cir.1984).

█ It seems clear from the statutory text that Congress intended a claimant to exhaust plan remedies prior to seeking federal court review. *See Taylor v. Bakery & Confectionary Union, Etc.,* 455 F.Supp. 816 (E.D.N.C.1978) (§ 1133 specifically requires the establishment of a claims procedure and extensive guidelines have been promulgated thereunder). "The policy reasons for applying the exhaustion doctrine include reduction of frivolous lawsuits, promotion and consistent handling of benefit claims, resolution of claims disputes through non-adversarial proceedings, and avoidance of costly litigation." *Worsowicz v. Nashua Corp.,* 612 F.Supp. 310, 314 (D.C.N.H.1985). *See also Makar v. Health Care Corp. of Mid–Atlantic,* 872 F.2d 80 (4th Cir.1989). This general rule is subject to court created exceptions; exhaustion is not required when it would be futile to require plaintiff to internally exhaust remedies; exhaustion is not required when the plaintiff was denied meaningful access to higher level review procedures; and, exhaustion is not required where irreparable harm would result if the plaintiff could not immediately bring his action in federal court. *Lee v. Prudential Ins. Co. of America,* 673 F.Supp. 998 (N.D.Cal.1987); *Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071 (E.D.Pa.1979). Defendant is entitled to judgment if the plaintiff has failed to exhaust her administrative remedies and if pursuit of those remedies at this time would be barred. *Gray v. Dow Chemical Co.,* 615 F.Supp. 1040 (W.D.Pa. 1985); *Ridens v. Voluntary Separation Program,* 610 F.Supp. 770, 778 (D.Minn. 1985).

█ Plaintiff concedes that she received the notice of the plan's procedure giving her sixty days to appeal the decision and

that no appeal was filed.[4] However, plaintiff argues the denial letter of April 20, 1987, fails to comply with those requirements set forth in 29 U.S.C. § 1133 and the corresponding regulations in 29 C.F.R. § 2560.503–1(e), (f) and (g). It is argued "[t]he defendant's letter denying benefits merely indicates that the denial is based upon the plaintiff's failure to attend the independent medical examination, and aside from that, it offers no statement of the facts involved in the case or a rationale for the denial of benefits." Plaintiff also points out there were no specific references to pertinent plan provisions. In essence, plaintiff alleges the denial letter was procedurally deficient.

Under § 1133 every benefit plan shall "provide adequate notice in writing to any participant ... whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant...." 29 U.S.C. § 1133(1). The regulations promulgated thereunder further state the content of the notice shall provide to the claimant the following information:

(1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f).

■ The plan fiduciaries are under a continuing statutory mandate to provide a review procedure. 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503–1(g). The regulations also provide that "[a] plan may establish a limited period within which a claimant *must* file any request for review of a denied claim." 29 C.F.R. § 2560.503–1(g)(3). If a claimant requests a review, the Trustees are given a strict time frame within which they must conduct a review of a claim denial. 29 C.F.R. § 2560.503–1(h)(3)(4). "[I]f the Trustees fail to comply with the mandatory time limits, the claimant may treat such as a denial for purposes of exhausting his administrative remedy." *Richardson v. Central States, Southeast & Southwest Areas Pension Fund,* 645 F.2d 660, 664 (8th Cir. 1981). These provisions are meant to safeguard participants and guarantee them certain procedural protections. *Clarke v. Bank of New York,* 687 F.Supp. 863, 870 (S.D.N.Y.1988).

The defendant's letter informs plaintiff of the specific reason for the denial, points out the steps to be taken for review, and provides the name and address of the person to contact to pursue an appeal. Defendant's Exhibit "D–14". *See generally Wolfe v. J.C. Penney Co.,* 710 F.2d 388, 392 (7th Cir.1983); *DePina v. General Dynamics Corp.,* 674 F.Supp. 46, 50 (D.Mass. 1987); *Tomczyscyn v. Teamsters Local 115,* 590 F.Supp. 211, 215 (E.D.Pa.1984). Although the letter does fail to cite specific plan provisions, it does quote the applicable provisions. Accordingly, the court believes the notice substantially complied with the statutory requirements.[5]

Plaintiff argues that under the circumstances herein exhaustion would be futile; thus, giving rise to the exception to the exhaustion of administrative remedies doctrine. Plaintiff, however, misconstrues the futility exception. The exception is applicable when *resort* to the administrative review procedure would be futile; not when the plaintiff has merely failed to timely request the review.

Plaintiff argues *Weeks v. Coca–Cola Bottling Co. of Arkansas,* 491 F.Supp.

---

**4.** Plaintiff doesn't challenge the applicability of the Plan's claims procedures to her case, *i.e.* a termination of benefits as opposed to a denial of a claim.

**5.** The fact that plaintiff was represented by counsel does not enter into the court's evaluation of the adequacy of the notice. *See DePina v. General Dynamics Corp.,* 674 F.Supp. 46, 50 (D.Mass.1987).

1312 (E.D.Ark.1980) and *Jenkins v. Local 705 International Brotherhood of Teamsters Pension Plan*, 713 F.2d 247 (7th Cir. 1983), stand for the proposition that a review may be requested, and may even be required, well beyond the expiration of the initial review period. The *Weeks* case is distinguishable. In *Weeks* the denial notice failed to inform the plaintiff of his right to take advantage of the 90–day appeal procedure. *Weeks*, 491 F.Supp. 1312, 1313 (E.D. Ark.1980). Thus, plaintiff was unaware of the 90–day appeal procedure until after the period expired. After he became aware that an appeal period existed, plaintiff made no effort to avail himself of the procedure but instead argued the committee "would have summarily denied any retirement request outside the 90–day period." *Id.* The court concluded the plaintiff should be required to make the request to the committee. The court stated if the plaintiff had attempted to carry out the procedure "[t]he Retirement Committee would either have allowed him to introduce this additional evidence and thereby provided the District Court with a more complete record for review or the Committee would have denied this request and the plaintiff could have relied on this denial as evidence of arbitrary and capricious actions on the part of the Committee." *Id.*

The procedure utilized in *Weeks* has already taken place in this case. The case was stayed while plaintiff requested a review of the denial of benefits. The administrator refused, on the basis that the request was untimely, to review the previous denial. The *Weeks* court did not force an administrative review but rather required the plaintiff to make the initial review request to the fiduciary of the plan. In this instance, the request was denied and it is this decision that is presently before the court. Thus, remand would be futile unless this court were to determine that the administrator was incorrect in determining her review request was untimely. *Jenkins* case does seem to support plaintiff's contention. However, the exact holding is unclear. *See Tiger v. AT & T Technologies*, 633 F.Supp. 532, 533–34 (E.D.N.Y.1986).

The court finds the case of *Tiger v. AT & T Technologies*, 633 F.Supp. 532 (E.D.N.Y. 1986) to be on point. In *Tiger* the court noted that typically "the exhaustion doctrine is invoked to forestall premature resort to a judicial forum." *Tiger*, 633 F.Supp. at 533. However, the issue before the court was "whether the failure to exhaust administrative remedies within the timeframe set forth in the Plan may forever bar an action in this Court." *Id.* Thus, the issue was identical to that presented herein. The court concluded that:

> Permitting a claimant to maintain an action after deliberately disregarding the Plan's stated review procedure (for which his union bargained) would impose substantial hardship upon the Plan and its thousands of participants, since Plan fiduciaries would be compelled to manage the Plan assets under the shadow of claims that might not be revived until years after the specified appeals period has elapsed. Such protracted delays clearly hinder the efforts of plan administrators and Courts in evaluating claims, given the inevitable problems involving staleness of proof. Accordingly, this Court finds that, absent equitable considerations, the failure to comply with reasonable time constraints prescribed by the Plan's review procedure precludes judicial review of a claim for benefits. *Cf. Ridens v. Voluntary Separation Program*, 610 F.Supp. 770, 778 (D.Minn. 1985).

The court finds this reasoning persuasive and will adopt this approach. Thus, the court turns to the question of "whether equitable considerations compel the Court to excuse the untimeliness of plaintiff's claims." *Tiger*, 633 F.Supp. at 534.

The doctrine of equitable estoppel is inapplicable to this case. Plaintiff does not argue that the defendant's conduct caused her to delay appealing the termination of her benefits. Rather, plaintiff's only argument is that her failure to comply with the plan's time requirements was the result of a misunderstanding.

As the plaintiff's failure to exhaust is not excused, the court need only determine

whether the administrator correctly determined her review request was untimely under the plan. As previously discussed, this dispute must be resolved by a *de novo* review of "the terms of the plan." *Bruch*, 109 S.Ct. at 955. Thus, the court is required to review employees' claims as it would "any other contract claim" *Wallace v. Firestone Tire & Rubber Co.*, 882 F.2d 1327, 1329 (8th Cir.1989).

The plan language at issue provides the plaintiff must seek an administrative review of the claim denial within 60 days of the written notification of the adverse decision. The requirement is unambiguous. *See, e.g., Bruch*, 109 S.Ct. at 951; *Wallace*, 882 F.2d at 1330. The emphasis in *Bruch* was on straight contact interpretation.

Accordingly, the court concludes, after having conducted a *de novo* review, that the plaintiff's action is barred. A separate order in accordance herewith will be concurrently entered.