

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-16-1996

# Epright v. Envir Res Mgt Inc

Precedential or Non-Precedential:

Docket 95-1110

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Epright v. Envir Res Mgt Inc" (1996). *1996 Decisions.* Paper 235.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/235

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-1110
_____


CHARLES JOHN EPRIGHT,
Appellant

v.

ENVIRONMENTAL RESOURCES MANAGEMENT, INC.
HEALTH AND WELFARE PLAN; ERM ENVIROCLEAN;
NOBLE LOWNDES/JOHNSON, Administrator; JOHN DOE
TRUSTEES, 1 through 10 in their capacity as
Trustees of the Environmental Management, Inc.
Health and Welfare Plan; CHIEF FINANCIAL OFFICER,
ENVIRONMENTAL RESOURCES MANAGEMENT, INC.

_____

On Appeal from the February 3, 1995 Order
of the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 93-cv-06034
_____

Argued November 13, 1995

Before: BECKER and SCIRICA, <u>Circuit</u> <u>Judges</u>
and COHILL, <u>District</u> <u>Judge</u>[1]

(Filed: February 16, 1996)


LOUIS AGRE, ESQUIRE (ARGUED)
718 Arch Street, Suite 4 North
Philadelphia, PA  19106

LORALEE CHOMAN, ESQUIRE
109 Oxford Street
Wilkes-Barre, PA  18702

<u>Attorneys for Appellant</u>

_____

[1]*The Honorable Maurice B. Cohill, Jr., United States District Judge for the Wes
District of Pennsylvania, sitting by designation.


2

MICHAEL F. KRAEMER, ESQUIRE (ARGUED)
DEBBIE RODMAN SANDLER, ESQUIRE
White and Williams
1800 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7395

Attorneys for Appellees

WAYNE R. BERRY, ESQUIRE
United States Department of Labor
Plan Benefits Security Division
200 Constitution Avenue, N.W.
Washington, DC  20210

Attorney for Amicus-appellant

———————

**OPINION OF THE COURT**
———————

COHILL, <u>Senior</u> <u>District</u> <u>Judge</u>

## I.  Jurisdiction

Here we consider the appeal from an Order of the United States District C

for the Eastern District of Pennsylvania entering judgment against the

appellant/plaintiff, Charles John Epright.  Mr. Epright is a former employee of the

defendant/appellee, ERM Enviroclean, Inc. ("ERM"), a corporation with its principal

of business in West Chester, Pennsylvania. Mr. Epright brought this action alleging

improper denial of medical benefits by ERM in violation of § 502(a) of the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 <u>et seq.</u>

The district court had subject matter jurisdiction based upon the alleged

violation of ERISA and 28 U.S.C. § 1331 (federal question).  Because of the discret

nature of the Plan Administrator's authority regarding Plan benefits, the district

reviewed the Plan Administrator's decision under an "arbitrary and capricious" stan

3

Kotrosits v. Gatx Corp. Non-Contributory Pension, 970 F.2d 1165, 1171 (3d Cir.), cer
denied, 113 S. Ct. 657 (1992).

The Secretary of Labor filed a brief as amicus curiae in support of the
appellant.

## II.  Background

The case arises because Mr. Epright was severely injured in a  non-work r
swimming pool accident and denied health and welfare benefits under the ERM employe
benefits plan.  ERM had a rather unusual business practice with respect to its empl
At the time an employee was hired, ERM's president, Stanley Porfido, would assign t
employee to one of three classifications – full-time, temporary, or part-time.  The
employee's classification would be changed only when Mr. Porfido so directed.  Neit
Porfido nor the company had written guidelines to determine how the employee shoul
designated or when the classification might be changed.  App. at 134.

Mr. Porfido testified that in deciding to change an employee's status to
time he considered the backlog of work, the employee's skills, attendance and an
employee's "performance, the initiative, and attitude that the individual brings to
job; the enthusiasm, the willingness to make an extra effort; having a can-do attit
[and] being a team player."  Id.

Part-time employees were not entitled to company health and welfare benef
When Mr. Epright was hired, on or about November 18, 1992, Mr. Porfido designated h
"temporary employee."

> The Employee Handbook stated in part:
> You are a full time employee of ERM if you work a minimum of 30 hours
> each week on a continuous basis and are designated as a full time
> employee.  As a full time employee you are eligible for group medical,
> life and long term disability insurance coverage . . . .
>
> You are a part time employee of ERM if you work less than 30 hours
> each week on a continuous scheduled basis or designated as a part time

4

employee.  You are not entitled to participate in group medical, life, and long-term disability plans.

App. at 331 (second emphasis added).

The Handbook made no reference to temporary employees such as Mr. Epright

The ERM Health and Welfare Plan, on the other hand, defines "eligible cla as all "active, full-time employees" of ERM who have selected the high option or st option plan, and states that the eligibility date is the "date following 60 consecu days of active, full-time employment."  App. at 191. The Plan goes on to state that employee is eligible the coverage will become effective on "the date eligible if ac at work . . . ."  Id.

An active, full-time employee is defined in the Plan as one who "regularl 30 hours or more each week . . . ."  App. at 232.

Like the Handbook, the Plan makes no reference to temporary employees.  N Epright regularly worked 40 to 65 hours per week from the time of his employment un date of his injury, July 31, 1993.  He had completed 60 days of service on January 1993.  Thus, if one excludes his designation by Mr. Porfido as a "temporary employe Epright unquestionably met the definition of an active, full-time employee in both Plan and the Employee Handbook.  If one applies the designation of temporary employ Mr. Epright, he still met the definition of active, full-time employee in the Plan, although not in the Employee Handbook.

Subsequent to January 25, 1993, it is undisputed that Mr. Epright often i of ERM when he would receive Health and Welfare benefits.  Indeed, he testified tha had previously worked for a contractor where he received no health benefits, and th accepted the job at ERM so that he could have health benefits, even though the pay same as he had received at his previous job.  App. at 100.

Finally, in July of 1993, he was informed that he would be eligible for F coverage commencing August 1, 1993.  He was instructed to fly from his work-site in

5

Florida to company headquarters in Pennsylvania and complete Plan enrollment forms
August 2, 1993.

As noted, the accident occurred on July 31, and the Plan Administrator re
coverage on the grounds that on July 31, Mr. Epright was a temporary employee and
therefore ineligible.

The Plan provides that an appeal from a denial of benefits must be made w
120 days.  Mr. Epright did appeal the initial denial, but subsequent to the 120 day
period.  ERM denied the appeal both on the merits and due to its untimeliness.  ERM
argued that Mr. Epright had never filled out the appropriate forms or indicated whi
health benefits option he wanted.  Mr. Epright commenced this action alleging wrong
denial of Plan benefits.  The parties agreed to bifurcate the issues of liability a
damages, and a bench trial was held solely on the issue of liability.

The Court entered judgment in favor of the defendants on December 6, 1994
holding that because Mr. Epright was a temporary employee, he was ineligible for Pl
benefits.  Mr. Epright  moved the district court to alter or amend its judgment; th
denied in February of 1995.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Its review of t
district court's legal conclusions is plenary. Epstein Family Partnership v. Kmart
13 F.3d 762, 765-66 (3d Cir. 1994).


### III.  Issues

Four issues must be considered here:

(A) Whether ERM may lawfully designate some employees as "temporary"
exclude them from Plan coverage because of this designation when the Plan makes no
reference to such designation;        (B) Whether the fact that Mr. Epright never fi
out Plan enrollment forms serves to exclude him from coverage;

6

(C) Whether his failure to request review of the denial of benefits

120 days is an independent basis for denial of benefits; and

(D) Whether the decision of the Plan Administrator to deny benefits

arbitrary and capricious.


## IV.  Discussion

### (A)

ERISA plans are required to be in writing.  29 U.S.C. §1102(a)(1).  They

be administered by fiduciaries, <u>id.</u>, and Congress has emphasized a fiduciary's obli

to comply with the terms of the Plan.  <u>Nazay v. Miller</u>, 949 F.2d 1323, 1329 (3d Cir

1991).

A Plan Administrator has discretion when interpreting the terms of the Pl

however, the interpretation may not controvert the plain language of the document.

<u>v. Amalgamated Ins. Fund</u>, 753 F.2d 288, 289 (3d Cir. 1985).  Extrinsic evidence may

used to determine an ambiguous term; however, it is inappropriate to consider such

evidence when no ambiguity exists.  <u>Boyer v. Douglas Components Corp.</u>, 986 F.2d 999

(6th Cir. 1993). Additionally, past practice is of no significance where the plan c

is clear.  <u>Blau v. Del Monte Corp.</u>, 748 F.2d 1348, 1353 (9th Cir. 1984), <u>cert. deni</u>

U.S. 865 (1985); <u>Snyder v. Titus</u>, 513 F. Supp. 926, 934 (E.D. Va. 1981) ("[b]eing

consistently wrong can hardly be sanctioned as right").

In the instant case, Mr. Epright argues that the Plan Administrator's den

insurance benefits controverts the plain language of the document.  He points out t

Plan expressly provides coverage to "full-time employees" who have completed sixty

"active" service.  Since the Plan defines active service as working more than thirt

a week, which Mr. Epright indisputably did, he argues that pursuant to the plain la

of the Plan, he was entitled to coverage on his sixty-first day of employment, Janu

1993.

7

ERM maintains that the district court was correct when noting that ERM wa[...] acting consistently with its long-standing policy when it denied benefits to Mr. Ep[...] a temporary employee.  It also points out that Mr. Epright knew that as a temporary employee he was not covered by the Plan.

Significantly, ERM argues that the term "full-time employee" is ambiguous[...] thus evidence extrinsic to the Plan may be used to interpret this term.  The issue [...] becomes whether the term "full-time employee," which is defined by the Plan, is amb[...] and subject to interpretation.

In support of its contention that the term "full-time employee" is ambigu[...] ERM relies on Gaines.  In Gaines, this Court held that a Plan provision allowing be[...] to people eligible  to receive them within nine months of the last date of employme[...] should be interpreted to mean entitled to receive benefits within the context of th[...] Social Security Act ("SSA"). Since under the SSA individuals are not entitled to be[...] until the sixth month after the onset of a disability, the Plan Administrator deter[...] that an employee was only eligible for benefits if a person was entitled to the ben[...] pursuant to the SSA (i.e. only if the end of the five month waiting period occurred[...] the nine month eligibility period).  Gaines, 753 F.2d at 290.  This Court held that [...] Administrator's interpretation was reasonable, and as such, not arbitrary or capric[...] Id. at 289. ERM argues that since the interpretation in Gaines was reasonable, its [...] interpretation of "full-time employee" is reasonable.  We disagree.

ERM's analogy between Gaines and the instant case fails on a number of po[...] First, the Plan language at issue in Gaines is dissimilar to the Plan language at i[...] the instant case. Second, and more importantly, there was no definition of the lang[...] question in the Plan in Gaines.  Thus, looking to the SSA for a definition was reas[...] In the instant case, a definition of the language in question is provided in the Pl[...] such, there is no reason to look outside the Plan for an interpretation.

8

Lastly, ERM is not pointing to a statutory provision to help define the t

was the case in <u>Gaines</u>; rather, ERM relies on a self-serving company practice.

We hold that the term "full-time employee" is not ambiguous.   A definiti

provided by the Plan, and it is this definition, not extrinsic evidence, that is to

used to interpret this term.   Simply because ERM has consistently misinterpreted th

"full-time employee" does not mean that such misinterpretation should be deemed par

the Plan and sanctioned as lawful. Accordingly, consistent with the Plan's language

hold that, for purposes of the Plan, Mr. Epright became a full-time employee at the

completion of sixty days of active service, or on January 26, 1993.

Mr. Epright has also argued that a Plan Administrator who has a conflict

interest should be held to some form of heightened scrutiny beyond the typical "arb

and capricious" standard.   Here Mr. Sevick, the Plan Administrator, was also a part

of the company.   A court may consider conflicts of interest as a factor when decidi

denial of benefits was arbitrary and capricious.   <u>Firestone Tire & Rubber Co. v. Br</u>

489 U.S. 101, 115 (1989); <u>Doe v. Group Hospitalization & Medical Servs.</u>, 3 F.3d 80,

(4th Cir. 1993).   Because we hold that ERM's denial of Plan benefits pursuant to it

practice of designating some employees as temporary ones controverts the plain lang

its Plan, we need not consider this issue.

(B)

ERM next argues that even if Mr. Epright was a full-time employee on Janu

1993, since he had not completed Plan enrollment forms, nor designated the type of

coverage he desired, he was not entitled to any Plan benefits.   ERM points to the l

in the Plan, which defines classes of employees eligible for coverage as those "who

<u>selected</u> the [appropriate coverage]."   <u>App.</u> at 191 (emphasis added).   ERM argues th

places an affirmative duty on an individual to select coverage prior to any such co

taking effect.   In support of this argument it points out that Mr. Epright might ha

9

selected the HMO coverage or additional compensation in lieu of Plan coverage.  In [...] event, it would have no liability for his current medical expenses.

The Secretary of Labor, in his brief amicus curiae, responds to this arg[...] noting that immediately following the above quoted language, the Plan, with respect[...] standard option coverage, states that "[i]f eligible, coverage shall become effecti[...] . . the date eligible if actively at work . . . ." Id. (emphasis added).  Thus, he [...] that this language means that if an employee is working actively, pursuant to the [...] definition, the employee becomes immediately eligible for the standard option cover[...] the sixty-first day of service to the extent another option has not otherwise been [...] selected.  As such, he maintains that since Mr. Epright became eligible for coverag[...] January 26, 1993, the standard option plan became effective on this date.

As additional support for his argument, the Secretary of Labor points to [...] fact that Mr. Porfido, ERM's president, testified that Mr. Epright was to become el[...] for benefits on August 1, 1993, which was one day prior to the day that he was supp[...] fly back from Florida to fill out the appropriate forms.  The Secretary thus argues[...] Mr. Porfido's testimony that Mr. Epright was to become eligible for Plan coverage [...] prior to filling out the forms shows that the completion of these forms is a minist[...] act which is not a condition precedent to becoming eligible for Plan coverage.

We agree with this last argument, particularly as it stands in the instan[...] context.  If an employee knew that he or she was eligible for Plan benefits and yet[...] not complete the requisite enrollment forms through procrastination or indecision, [...] might have an argument that the employee was not covered by the Plan.  Such is not [...] case here.  Due to ERM's erroneous interpretation of the Plan, Mr. Epright was unde[...] mistaken impression that he was not eligible for Plan coverage.  He had made numero[...] inquiries into when his employee status would change so that he would be eligible f[...] benefits.  Thus, it was not through lack of diligence on his part that the enrollme[...] forms were not completed; rather, it was solely due to ERM's erroneous interpretati[...]

10

its own Plan.  ERM should not now be allowed to benefit from its own mistake at the

expense of its employee.  To the extent that completed enrollment forms are a prere

to eligibility for Plan benefits, such a requirement is excused in the instant case

their lack of existence is due to the defendant's mistake, and not the plaintiff's.

(C)

ERM's next argument is that even if it otherwise should have been li

for Plan benefits in the instant case, Mr. Epright's untimely request for review of

initial denial of Plan benefits precludes him from obtaining those benefits.

The Plan provides that after a denial of benefits a participant has

days to request that the Plan Administrator review the denial.  Mr. Epright did req

such a review; however, he did so more than 120 days after the denial of benefits.

Plan Administrator used the untimeliness of this request as one of his reasons for

Mr. Epright Plan benefits.  ERM argues that in using the untimeliness of the reques

review to deny Mr. Epright Plan benefits, the Plan Administrator was relying on the

language of the Plan, and as such his decision should be upheld.  Mr. Epright respo

arguing that ERM's initial letter denying him Plan benefits fell short of statutory

regulatory requirements, and as such his request for review was timely. Specificall

points out that Section 503 of ERISA provides that,

> In accordance with regulations of the
> Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any
> participant or beneficiary whose claim for benefits under
> the plan has been denied, setting forth the specific reasons
> for said denial, written in a manner to be understood by the
> participant; and
>
> (2) afford a reasonable opportunity to any
> participant whose claim for benefits has been denied for a

---

[2]Just as in contract law, failure to satisfy a condition should be excused if the o
party thwarted fulfillment of the condition. This is especially true here, where th
Administrator's failure to allow Epright to choose a health plan option contradicte
plain terms of the Plan and thus violated ERISA's exclusive purpose and prudence
requirements.

11

> full and fair review by the appropriate named fiduciary of
> the decision denying the claim.

29 U.S.C. § 1133. Additionally, and in accordance with Section 503, the Secretary

Labor has established that the notice of a claim denial must:

> provide to every claimant who has been denied a claim for
> benefits written notice setting forth in a manner calculated
> to be understood by the claimant:
>
> (1) The specific reason or reasons for the denial;
> (2) Specific reference to pertinent plan provisions on which
> the denial is based;
> (3) A description of any additional material or information
> necessary for the claimant to perfect a claim and an
> explanation why such material or information is necessary;
> and
> (4) Appropriate information as to the steps to be taken if
> the participant or beneficiary wishes to submit his or her
> claim for review.

29 C.F.R. § 2560.503-1(f). Mr. Epright argues that ERM's letter denying him benefi

not comply with subsections (2)-(4) of the above regulation, and as such his reques

review was timely. ERM does not rebut these assertions, although they do argue that

Epright's attorney had a copy of the Plan, and they argue that as such, there was r

excuse for requesting review subsequent to the 120 day period. We disagree.

We initially note that in their letter of denial, ERM took the posit

that because Mr. Epright was a temporary employee, and not a participant of their P

they were under no duty to comply with ERISA. App. at 184-85. The letter did not

to any Plan provision as a basis for denying the claim, nor did it provide informat

to how Mr. Epright could perfect his claim. Most significantly, it did not referen

appropriate avenue for obtaining a review of the decision denying Mr. Epright benef

Id. When a letter terminating or denying Plan benefits does not explain the proper

for pursuing review of the termination or denial, the Plan's time bar for such a re

not triggered. White v. Jacobs Eng'g Group, 896 F.2d 344, 350 (9th Cir. 1989). I

instant case, because ERM's letter denying Mr. Epright Plan benefits did not explai

proper steps for requesting a review of this denial, the 120 day time bar was not

12

triggered.  Accordingly, his request for review was submitted in a timely fashion.

fact that Mr. Epright's attorney had a copy of the Plan, and thus the means to asce

the proper steps for requesting review, in no way excuses ERM's failure to comply w

Department of Labor's regulations.  E.g., Tomczyscyn v. Teamster Local 115 Health a

Welfare Plan, 590 F. Supp. 211, 214 (E.D. Pa. 1984); McClean Hosp. Corp. v. Lasher,

Supp. 110, 125 (D. Mass. 1993); Graham v. Federal Express Corp., 725 F. Supp. 429,

(W.D. Ark. 1989).

Because we hold that Mr. Epright's request for review of the initial

decision to deny him Plan benefits was submitted in a timely fashion, we need not a

his argument that even if his request for review was not timely submitted, it shoul

excused because seeking such review would have been futile.

(D)

The last issue is, considering the above discussion, whether ERM acted

arbitrarily and capriciously when denying Mr. Epright's benefits.  The United State

of Appeals for the Eighth Circuit has held that when the Trustees of a pension plan

imposed standards not required by the plan itself, they acted arbitrarily.  Morgan

Mullins, 643 F. 2d 1320, 1321 (8th Cir. 1981).  We agree with this proposition of l

Moreover, only written amendments, executed in accordance with the Plan's procedure

amendments, can change the Plan.  Oral amendments are not valid.  Confer v. Custom

Co., 952 F.2d 41, 43 (3d Cir. 1991).  In the instant case ERM's imposition of the

"Temporary Employee" classification is a standard not required by the Plan. Essenti

it is an amendment to the Plan that has not been incorporated into the Plan documen

imposing a requirement which is extrinsic to the Plan, ERM has acted arbitrarily an

capriciously.

ERM attempts to rebut this conclusion by arguing that under the arbitrary

capricious standard, a Plan Administrator's decision should be upheld if there is a

reasonable basis for doing so.  Blakeman v. Mead Containers, 779 F.2d 1146, 1150 (6

13

1985).  This a correct statement of that rule of law, but it does not apply here. classification of Mr. Epright as a temporary employee controverted the Plain langua the Plan; Mr. Epright was validly excused from completing enrollment forms due to E mistaken conduct and Mr. Epright sought review of the initial denial of Plan benefi timely fashion.  Accordingly, there was no reasonable basis for the Plan Administra denial of benefits.

### V.  Conclusion

In summary, we hold that Mr. Epright met all of the Plan's requirements f coverage thereunder, and as such he was entitled to coverage under the Standard Opt Plan.  ERM's practice of designating employees as temporary or full-time is extrins the Plan, and as such cannot lawfully be considered when determining who is eligibl Plan coverage.  If ERM wants to adopt such a procedure, it must amend its Plan in p fashion.  Because the enrollment forms were not completed due to ERM's mistake, and through any fault of the plaintiff, the lack of completed forms will not preclude N Epright from coverage under the Plan.  We also hold that Mr. Epright did seek revie the Plan Administrator's initial denial of Plan benefits in a timely fashion.  Fina hold that ERM, through its Health and Welfare Plan, is liable for benefits pursuant Plan's standard option.  The case is remanded to the United States District Court f Eastern District of Pennsylvania for further proceedings consistent with this opini

_____

14