_____

No. 95-3185
_____

United of Omaha,                        *
                                        *
      Plaintiff - Appellee,             *    Appeal from the United States
                                        *    District Court for the
      v.                                *    Western District of Missouri.
                                        *
Business Men's Assurance                *
Company of America,                     *
                                        *
      Defendant - Appellant.            *


_____

Submitted:  April 8, 1996

Filed:  January 14, 1997
_____

Before  RICHARD  S.  ARNOLD,  Chief  Judge,  WOLLMAN  and  HANSEN,  Circuit
      Judges.
_____


HANSEN, Circuit Judge.

      Business Men's Assurance Company of America (BMA) appeals from an
order of the district court granting summary judgment to United of Omaha
(United) in a dispute under Missouri state law over which company was
responsible to pay health insurance benefits.  BMA argues that the Employee
Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq.,
preempts United's claim and, alternatively, that the district court
erroneously interpreted and applied Missouri law, on issues of both
liability and damages.  We affirm in part and reverse in part.

I.  FACTS

The undisputed facts of this case are as follows.  BMA issued a group health insurance policy to Western Water Management, Inc. (Western) for the benefit of Western's employees, effective January 1, 1989.  Western's group policy was a welfare plan subject to ERISA.  During the time of its coverage, one of Western's employees, Clyde Jones, became totally and permanently disabled, and as a result, Jones experienced a reduction in hours of employment.  This was a "qualifying event" under the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161-68 (1988), a 1985 amendment to ERISA that requires plan sponsors like Western to provide an opportunity for individuals like Jones to obtain continuing coverage under such circumstances.  Jones elected to obtain coverage, which BMA began providing to Jones as a COBRA continuee on October 1, 1989.  The BMA policy expired on November 30, 1990.

Western replaced the BMA policy with an insurance policy issued by United, effective December 1, 1990.  Jones began paying monthly premiums to United on that date and was thereafter covered as a COBRA continuee under the United policy.

During the period between December 1, 1990 and December 1, 1991, the 12-month period following BMA's policy's termination, a number of health care providers presented bills to United for Jones's medical expenses.  United paid the bills but later sought reimbursement from BMA, contending that BMA was responsible for the expenses pursuant to Missouri law that governs the discontinuance and replacement of insurance for disabled individuals.  See Mo. Rev. Stat. §§ 376.438, 376.441.  BMA refused to reimburse United, pointing to a provision in BMA's group policy which provides that its obligation to provide extended benefits terminates when an individual becomes fully covered by another insurer.

2

United brought this action against BMA, seeking damages under Missouri law for the hospital and medical expenses United had paid on behalf of Jones during the 12-month period following the termination of BMA's policy. The parties filed a series of motions for summary judgment, making arguments on liability, certain affirmative defenses, and damages. The district court granted United's motions for summary judgment, holding that United's state-law claim was not preempted by ERISA and, according to Missouri law, BMA is liable for Jones's medical and hospital expenses incurred from December 1, 1990, through December 1, 1991. The court calculated the damages based upon the full amount of medical expenses United had paid, plus prejudgment interest.

BMA appeals, asserting a number of arguments. First, BMA contends that the district court erroneously interpreted sections 376.438 and 376.441 of the Missouri Revised Statutes. Second, BMA claims that ERISA preempts the Missouri statutes, as interpreted by the district court, because they are in conflict with the federal statute, as amended by COBRA. BMA also argues that ERISA preempts United's state-law subrogation claim. Next, BMA maintains that even if the district court correctly interpreted the statutes, and even if United's claim is not preempted, the court erroneously applied the Missouri state law of equitable subrogation. Finally, BMA contends that the district court erred in calculating damages.

## II.  Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standards as did the district court. Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 217 (8th Cir. 1993). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this case,

3

because the parties do not dispute the facts, our inquiry is limited to whether United was entitled to judgment as a matter of law.  We review the district court's determination of Missouri state law de novo.  Salva Regina College v. Russell,  499 U.S. 225, 231 (1991); United States v. Green Acres Enters., Inc., 86 F.3d 130, 133 (8th Cir. 1996).

## III.  Statutory Interpretation

To determine whether United has a cause of action that is preempted by ERISA, we must interpret the state statute on which the cause of action is based.  The district court interpreted the state statute to require BMA, as a prior carrier of group health insurance, to provide Jones an extension-of-benefits for 12 months following the termination of the policy, regardless of whether Western had secured replacement coverage. The court then looked at BMA's policy, which provided an extension for medical expenses, without payment of a premium, "1) for up to 3 months after coverage terminates for any sickness or injury; and 2) for up to 9 more months for the sickness or injury causing the total disability," but which also stated that the extension of benefits would be terminated on "[t]he date the [c]overed [p]erson is covered under any other group policy or employer-funded plan."  (J.A. at 76.)  Finding this termination provision of the policy to be incompatible with Missouri law, the district court held that it was void.  BMA argues that the extension-of-benefits coverage provided in its policy does not violate the state statute because it is reasonable, within the meaning of section 376.438.1, for BMA to refuse to extend benefits after the disabled person is covered by a replacement policy.

Our primary objective in interpreting the Missouri statute is to ascertain the legislative intent from the statutory language and, if possible, to give effect to that intent.  Rothschild v. State Tax Comm'n of Mo., 762 S.W.2d 35, 37 (Mo. 1988) (en banc).

4

"[W]e consider the words employed in the statute in their plain and ordinary meaning, we presume the legislature did not intend an absurd law, and we favor a construction that avoids unjust or unreasonable results." Id. (internal citation omitted). When the plain and ordinary meaning of the language is unambiguous, "we are afforded no room for construction." Brownstein v. Rhomberg-Hagling & Assoc., 824 S.W.2d 13, 15 (Mo. 1992) (en banc).

Section 376.438.1 of the Missouri Revised Statutes provides:

> Every group policy or other contract subject to sections 376.431 to 376.442, or under which the level of benefits is hereafter altered, modified or amended, must provide a reasonable provision for extension of benefits in the event of total disability at the date of any termination or discontinuance of the group policy or contract, regardless of the reason for the termination or discontinuance, as required by the following subdivisions of this subsection[.]

This provision has three subdivisions. Subdivision (3) states, in relevant part:

> In the case of hospital or medical expense coverages . . ., a reasonable extension of benefits or accrued liability provision is required. Such a provision will be considered reasonable if it provides an extension of at least twelve months under major medical and comprehensive medical type coverages . . . .

Mo. Rev. Stat. § 376.438.1(3).

To interpret the language of section 376.438, we must also look at section 376.441, which explains the coverage requirements of replacement carriers and the allocation of liabilities between prior and succeeding carriers. Section 376.441 begins by stating:

> When one carrier's contract replaces a plan of similar benefits of another carrier, the prior carrier remains liable only to the extent of its accrued

5

liabilities and extensions of benefits. The position of the prior carrier shall be the same whether the group policyholder or other entity secures replacement coverage from a new carrier, self-insurer, or foregoes the provision of coverage.

The statute requires succeeding carriers to provide coverage for individuals who are not eligible under the succeeding carrier's policy, but who were validly covered under a benefit extension on the date of the prior carrier's discontinuance and who are in the class of persons eligible for coverage under the succeeding carrier's policy. Under this required coverage, the succeeding carrier's obligation to pay benefits is measured by the applicable benefits under the prior carrier's plan, reduced by the benefits payable by the prior carrier. Id. § 376.441(1); see also id. § 376.441(3) (measuring the succeeding carrier's obligation to pay expenses related to preexisting conditions by the lesser of (1) the benefits of the succeeding carrier's policy without regard to any limitation for preexisting conditions or (2) the benefits of the prior carrier's policy). The succeeding carrier must provide this coverage until the earliest of several dates, one of which is when the period of extension or accrued liability by the prior carrier has terminated. Id. § 376.441(2)(c). When the situation arises requiring a determination of the prior carrier's benefits, those benefits are to be determined under the prior carrier's plan, "as if coverage had not been replaced by the succeeding carrier." Id. § 376.441(5).

Section 376.441 reveals that BMA's policy of providing extended benefits only until replacement coverage is secured is not "reasonable" within the meaning of section 376.438. The first two sentences of section 376.441 clearly indicate that a prior carrier remains liable "to the extent of its accrued liabilities and extensions of benefits," even if the group policy holder has secured coverage from a succeeding carrier. Further, the statute states that for individuals like Jones who were covered by a

6

benefit extension on the date of discontinuance, the amount of benefits a succeeding carrier must pay depends upon the benefits available under the prior carrier's plan. See Mo. Rev. Stat. § 376.441(1), (5). The plain language of section 376.441 contemplates that the coverage of the succeeding replacement carrier is secondary to the benefits payable by the prior carrier under its extension-of-benefits provision. We therefore reject BMA's interpretation of section 376.438.1(3).

We also note that BMA's interpretation of what is reasonable misconstrues the nature of the section 376.438 requirements. The statute mandates that BMA provide, for a reasonable time, an extension of benefits, not full coverage. Section 376.441 makes this clear, because it requires the succeeding carrier to provide replacement coverage until the earliest of several dates, one of which is when the prior carrier's extension of benefits terminates. Id. § § 376.441(2)(c). This obligation on the succeeding carrier would be unnecessary if an extension of benefits were the same as extended coverage. See also id. § 376.441(1) (defining the succeeding carrier's required replacement coverage by the total coverage provided under the prior carrier's plan before it was discontinued, minus the benefits payable by the prior carrier). Thus, BMA's statutory obligation to provide an extension of benefits is not a "coverage" requirement and should not be confused with any obligation United or Western had to Jones.

We therefore hold that BMA was primarily obligated to provide extended benefits to Jones for a reasonable period of time. We further hold that BMA cannot avoid this requirement merely because Western secured replacement coverage for Jones. Because of our disposition of this case under the preemption analysis below, we need not consider the issues of whether the language in section 376.438(3) regarding a 12-month period is definite or indefinite and exactly what types of benefits the statute requires BMA to pay.

7

IV.  ERISA Preemption

BMA argues that United's claim is preempted by ERISA, both because the Missouri statutes are in conflict with COBRA and because United styles its claim as a common-law subrogation claim.  ERISA regulates employee pension and welfare plans.  While ERISA imposes various procedural standards on welfare plans,[1] it does not regulate the substantive content of such plans. Metropolitan Life, 471 U.S. at 738.

As with all preemption analysis, our task is to ascertain congressional intent in enacting the federal law.  Id.  In enacting ERISA, Congress set out:

> "to ensure that plans and plan sponsors would be subject to a
> uniform body of benefits law; the goal was to minimize the
> administrative and financial burden of complying with
> conflicting directives among States or between States and the
> Federal Government . . ., [and to prevent] the potential for
> conflict in substantive law . . . requiring the tailoring of
> plans and employer conduct to the peculiarities of the law of
> each jurisdiction."

New York Conference of Blue Cross v. Travelers Ins., 115 S. Ct. 1671, 1677 (1995) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990)). To this end, ERISA contains a preemption provision declaring that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to employee benefit plans."  29 U.S.C. § 1144(a).  We construe this language broadly, Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987),

---

[1]"An employee welfare-benefit plan or welfare plan is defined as one which provides to employees `medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident disability [or] death,' whether these benefits are provided `through the purchase of insurance or otherwise.'" Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 732 (1985) (quoting 29 U.S.C. § 1002(1)).  The parties agree that Western provided its employees with a welfare plan as defined by ERISA.

finding that a state law relates to employee benefit plans if it "refers to or has a connection with covered benefit plans . . . `even if the law is not specifically designed to affect such plans, or the effect is only indirect,' and even if the law is `consistent with ERISA's substantive requirements.'"  District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 129-30 (1992) (quoting, and citing internally, Ingersoll-Rand, 498 U.S. at 139, and Metropolitan Life, 471 U.S. at 739).

The "relates to" language of the preemption clause is meant to provide some boundaries to the scope of preemption, however, and the question of whether state law is connected with ERISA is not to be carried to its infinite, logical limits.  New York Conference of Blue Cross, 115 S. Ct. at 1677.  To fall within the parameters of ERISA's preemption clause, the state law must be related to ERISA in an aspect that affects ERISA's objectives.  Id.; see Arkansas Blue Cross & Blue Shield v. St. Mary's Hospital, 947 F.2d 1341, 1344-45 (8th Cir 1991) (discussing the factors courts have used to determine whether a state law relates to ERISA plans). In essence, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law `relates to' the plan."  Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983).  See, e.g., Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 831-34 (1988) (holding no preemption of a state's general garnishment statute, even though it might burden the administration of an ERISA plan when applied to collect judgments against plan participants); McCallum v. Rosen's Diversified, Inc., 41 F.3d 1239, 1241-42 (8th Cir. 1994) (holding no preemption of state statute authorizing court-ordered valuation and buyout, even though such a buyout may require valuation of shares in employee stock ownership plan).

If a state law does in fact fall within the scope of ERISA's preemption clause, it may nonetheless be excepted under what has become known as the "savings clause."  29 U.S.C. § 1144(b)(2)(A).

The savings clause excepts from preemption certain categories of state law, including state law that regulates insurance. The Supreme Court has explained that a state law "regulates insurance" if (1) it is directed specifically toward the insurance industry and (2) it applies to the "business of insurance" within the meaning of the McCarran-Ferguson Act, which gives to the states the authority to regulate the business of insurance, see 15 U.S.C. §§ 1011-1015. Pilot Life, 481 U.S. at 48; Metropolitan Life, 471 U.S. at 742-43; Baxter v. Lynn, 886 F.2d 182, 185 (8th Cir. 1989). A law applies to the business of insurance under the McCarran-Ferguson Act if it (1) has the effect of transferring or spreading the policyholder's risk; (2) is an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry. Metropolitan Life, 471 U.S. at 743.[2]

Regulation of the insurance industry may exist both in ERISA and in state law. In such circumstances, "ERISA leaves room for complementary or dual federal and state regulation." John Hancock Mut. v. Harris Trust & Sav. Bank, 114 S. Ct. 517, 525 (1993); see also McCallum, 41 F.3d at 1240. However, "in the case of a direct conflict, federal supremacy principles require that state law yield." Id. at 526. Moreover, "`where [state] law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress,' federal preemption occurs." Id. at 526 (quoting Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984)); see also Pilot Life, 481 U.S. at 57 (finding state cause of action for improper processing of a claim for ERISA benefits conflicts with

---

[2]The savings clause is limited, in turn, by the "deemer clause," FMC Corp. v. Holliday, 498 U.S. 52, 56 (1990), which states that no employee-benefit plan "shall be deemed to be an insurance company or other insurer, . . . or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies . . . ." 29 U.S.C. § 1144(b)(2)(B). This limitation is not in issue in the case before us today.

the civil enforcement scheme of ERISA-plan participants and beneficiaries to recover benefits owed under an ERISA plan).

With this legal framework in mind, we turn now to BMA's arguments that Missouri's extension-of-benefits statute and this cause of action are preempted.

A. Preemption and Missouri Revised Statute 376.438

Applying the same preemption analysis as set forth above, the district court concluded that ERISA does not preempt sections 376.438 and 376.441 of the Missouri Revised Statutes. The court determined that although the Missouri statutes "relate to" the ERISA plan, they are rescued from preemption by the savings clause because they "mandate certain benefits and govern liability among insurance carriers for providing those benefits." (Appellant's Adden. at A-4.). The district court determined that the statutes regulate the business of insurance within the meaning of the McCarran-Ferguson Act. In reaching its conclusions, the district court relied primarily on Metropolitan Life, 471 U.S. at 741-43, which held that a mandated-benefits statute was not preempted because it was governed by the savings clause.

BMA contends that the district court's conclusion is flawed because the court failed to consider adequately the limitations on the savings clause announced in Pilot Life, 481 U.S. at 56-57, a case decided after Metropolitan Life. In Pilot Life, the Supreme Court held that a beneficiary may not bring a state-law cause of action disputing the allocation of benefits, for such an action conflicts with ERISA's civil enforcement scheme. Id. BMA maintains that the Missouri statutes conflict with COBRA and thus are preempted pursuant to Pilot Life.

The precise requirement at issue in this case is the extension-of-benefits requirement of Missouri Revised Statute,

11

section 376.438.  We conclude that although this statute relates to employee benefit plans, it is excepted from preemption by the savings clause.  As already discussed, the extension of benefits statute works to ensure that a discontinued carrier remains primarily liable for a reasonable extension of benefits to a disabled individual.  The statute is directed specifically toward insurance companies and regulates the business of insurance within the meaning of the McCarran Ferguson Act.  Accordingly, we agree with the district court's conclusion that section 376.438 is saved from ERISA preemption.

Thus, we turn to the question of whether section 376.438 is in conflict with ERISA.  John Hancock Mut., 114 S. Ct. at 526; see also Pilot Life, 481 U.S. at 57.  We see no conflict between Missouri's extension-of-benefits statute and COBRA.  COBRA requires plan sponsors of group health insurance policies to provide the opportunity for continuing coverage to beneficiaries who would lose coverage as a result of a qualifying event. 29 U.S.C. § 1161(a).  COBRA is directed at the plan sponsor (here, Western), whereas section 376.438 is directed at prior carriers (here, BMA).  COBRA mandates an opportunity for Jones to obtain coverage, for which he pays premiums, see id. § 1162(2)(C) (coverage ceases when beneficiary fails to make timely payment of premium), while section 376.438 requires BMA to provide reasonable extended benefits for certain claims, without the payment of any additional premiums and regardless of any other coverage Jones may have.  Thus, section 376.438 does not conflict with COBRA, because it governs a different situation and is directed at an entirely different entity.[3]

---

[3]We note that Missouri has a continuing coverage statute that is in fact analogous to COBRA, Mo. Rev. Stat. § 376.428. The Missouri legislature avoided any conflict with COBRA by amending the statute in 1987 to apply "only to those persons who are not subject to the continuation and conversion provisions set forth in [COBRA]."  Id. § 376.428.4.

12

BMA's assertion that United subjected itself to COBRA requirements by issuing a group policy to Western misses the mark. Western, the plan sponsor, fulfilled its COBRA obligations by securing an opportunity for Jones to obtain continued coverage through United. BMA's claims that United became a fiduciary under COBRA and that United has continuing duties under COBRA (such as giving Jones notice) simply do not affect BMA's duty to provide an extension of benefits under Missouri state insurance law.

BMA also submits a conflict-preemption argument based on COBRA's requirement that the continuing coverage provided to disabled individuals be identical to the coverage provided to similarly situated beneficiaries to whom a qualifying event has not occurred. See 29 U.S.C. § 1162(1). BMA contrasts this requirement with the language in section 376.441(3) of the Missouri statutes, which provides that a succeeding carrier's obligation to pay benefits is determined by the terms in the prior carrier's plan. BMA contends that because the terms in the prior plan may not be identical to the coverage similarly situated beneficiaries have under the succeeding carrier's plan, the Missouri statutes governing discontinuance and replacement coverage for disabled individuals must be preempted. Once again, we note that COBRA is directed at the plan sponsor, whereas sections 376.438 and 376.441 are directed at the insurance companies. More importantly, however, we conclude that we need not decide today whether section 376.441 is preempted by virtue of this alleged conflict, for it has nothing to do with the precise question before us; the narrow issue presented in this case is whether ERISA preempts section 376.438, which requires BMA to provide extended benefits for a reasonable period of time. We leave the preemption question regarding section 376.441 for another day, and specifically hold that ERISA does not preempt section 376.438 of the Missouri Revised Statutes.

We recognize that our holding negates the provision in BMA's policy providing for a termination of extended benefits when the

13

recipient obtains other coverage, but this provision conflicts with the substance of state insurance law. Having already concluded that the state extension-of-benefits statute is an insurance regulation saved from preemption and fully compatible with the language and spirit of ERISA, we will not now find that a conflicting provision in BMA's ERISA plan overrides the state statute. To do so would be to open the door for insurance companies to avoid any state insurance law simply by including a contrary provision in their group ERISA welfare plans. Arkansas Blue Cross & Blue Shield, 947 F.2d at 1345. We do not believe Congress intended such a result. Cf. FMC Corp. v. Holliday, 498 U.S. 52, 61, 64 (1990) (finding that a subrogation provision in a self-funded ERISA plan preempted a state antisubrogation statute because of the deemer clause, but noting that if the plan had been insured, it would be bound by state insurance regulations).

In summary so far, we conclude that section 376.438 of the Missouri Revised Statutes, which requires insurance companies to provide an extension of benefits to disabled individuals upon discontinuance of the policy, relates to employee benefits plans but is rescued from ERISA preemption because it comes within ERISA's savings clause. Additionally, we conclude that the statute is not preempted by ERISA under a conflict-preemption analysis.

B. Preemption and the Common Law of Subrogation

Whether United's cause of action is preempted presents yet another question. United brought this cause of action under state common law as a subrogee.[4] United's theory is that it became subrogated to the rights of Jones when it paid claims for which BMA was primarily liable. Relying on Baxter, 886 F.2d at 186, BMA

_____

[4]Because United is not a "participant" or "beneficiary," United has no standing to bring an ERISA claim. 29 U.S.C. § 1132(a)(1)(B).

14

argues that ERISA preempts United's state-law subrogation claim.  We agree.

In <u>Baxter</u>, the beneficiary had been awarded damages from a tortfeasor in addition to the medical benefits he had received under an ERISA plan. When the plan's insurer attempted to enforce a plan provision creating a right of subrogation in favor of the insurer against the beneficiary, the beneficiary pointed to state law precluding such subrogation.  We found that the state antisubrogation law prevented the plan administrator from exercising its rights under the plan to obtain reimbursement from the beneficiary for the medical expenses paid.  Because the state law directly impacted the structure of the ERISA plan, we concluded that it was related to the plan.  <u>See</u> <u>Arkansas BCBS</u>, 947 F.2d at 1345 (explaining <u>Baxter</u>).  We further found that the law was not saved from preemption by the savings clause, and consequently, ERISA preempted the state antisubrogation law.

The district court in this case distinguished <u>Baxter</u> and rejected BMA's preemption argument on the basis that United's subrogation claim is not related to the plan.  The court stated:

> Although the terminology is the same, the subrogation involved in <u>Baxter</u> and that involved here are entirely different.  The subrogation at issue in <u>Baxter</u> related to the rights and obligations running between the insurer and the insured.  It thus "relate[d] to an employee benefit plan," and required analysis under the McCarran-Ferguson Act.  By contrast the subrogation involved here is unrelated to the substantive provisions of the insurance policy; it is simply an equitable principle for recovering a claim from one who ought to have paid it.

(Appellant's Adden. at A-5.)

We agree that in some respects, this case is quite different from <u>Baxter</u>.  Here, the dispute is between two insurance companies

15

over which company is responsible to pay for certain benefits. This particular state-law claim does not affect either the amount of benefits due to Jones or any reimbursement from him to the plan. This subrogation claim implicates the allocation of liability between prior and succeeding insurance carriers under state insurance law.

Despite these distinctions from Baxter, we nonetheless conclude that ERISA preempts United's claim. Under Missouri law, "[i]t is . . . well established that in [a subrogation] action a party makes a claim through a derivative right acquiring no greater rights in law or equity than the party for whom it was substituted and therefore, cannot make a claim its subrogor could not make." Stoverink v. Morgan, 660 S.W.2d 743, 745 (Mo. Ct. App. 1983). Thus, as a subrogee, United stands in the shoes of Jones and has no greater rights than Jones has. Under settled law, Jones could not bring a state-law claim seeking benefits owed him under section 376.438, because ERISA would preempt that claim and require him to use ERISA's remedies. See Pilot Life, 481 U.S. 54-56 (holding that ERISA preempts a beneficiary's state-law causes of action based on improper processing of claims for benefits because the civil enforcement provisions of ERISA are meant to be the exclusive vehicle for such actions). Consequently, United's state-law subrogation claim is likewise preempted.

To be sure, subrogation is an equitable doctrine founded on principles of justice, and BMA was obligated under Missouri law to provide a reasonable extension of benefits. See American Nursing Resources, Inc. v. Forrest T. Jones & Co., 812 S.W.2d 790, 796 (Mo. Ct. App. 1991); Quality Wood Chips, Inc. v. Adolphsen, 636 S.W.2d 94, 96-97 (Mo. Ct. App. 1982) (explicating the nature of subrogation claims). The equitable nature of the doctrine, however, is that we theoretically place the subrogee in the shoes of the subrogor. We cannot change the color or size of those

16

shoes.  We therefore hold that United's state-law cause of action, based on its right of subrogation, is preempted by ERISA.

## V.  Conclusion

For the above reasons, we affirm the district court in its conclusion that ERISA does not preempt section 376.438 of the Missouri Revised statutes, but we reverse the district court's conclusion that ERISA does not preempt United's subrogation cause of action.  We do not consider the parties' remaining arguments, because our reversal on the basis of preemption renders them moot.  The judgment of the district court is vacated, and the case is ordered dismissed with prejudice.

RICHARD S. ARNOLD, Chief Judge, concurs in the judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

17