Michelle ANTOLIK, Sara Biris, Marleen Dixon, Anne Golke, Carol Jones, Jennifer Ladehoff, Susan McClellan, Darlene Owens, Linh Phantha Vong, Susan Robeoltman, Dena Steinbach, Julie Vogeler, Connie Ward, Tosha Whitson, Cheryl Womack, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

SAKS INCORPORATED, d/b/a Younker's, Defendant.

No. 4:03–CV–90203.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 13, 2003.

George A. Lamarca, Justin E. Lavan, Lamarca & Landry, West Des Moines, IA, for plaintiff.

Dennis W. Johnson, Angela E. Dralle, Dorsey & Whitney, Des Moines, IA, for defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiffs bring this action against Defendant Saks, Inc., alleging common law

claims for breach of contract, promissory estoppel, and fraudulent misrepresentation. Plaintiffs further allege a statutory violation of the Iowa Wage Payment Collection Law under Chapter 91A of the Iowa Code. The dispute here involves a change of control severance plan adopted by Defendant and Plaintiffs' entitlement to benefits thereunder. Plaintiffs originally filed this lawsuit in the Iowa District Court for Polk County, and Defendant removed to this Court citing both federal question (28 U.S.C. § 1131) and diversity of citizenship (§ 1132) subject matter jurisdiction as grounds for removal.

Presently before the Court is Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Plaintiffs have resisted the Motion, and the Court heard oral argument from both sides during a July 21, 2003 hearing. As explained below, Defendant's Motion to Dismiss is denied in part and granted in part.

## I. BACKGROUND

At all relevant times, Plaintiffs were employed at the division headquarters of the Younkers department stores in Des Moines, Iowa. Younkers, Inc. is owned by Parisian, Inc., a wholly owned subsidiary of Defendant Saks, Inc. ("Saks"). Plaintiffs are citizens of Iowa, and Saks is a corporation incorporated under the laws of the State of Illinois, with its principal place of business in Birmingham, Alabama.

In the fall of 2000, Plaintiffs and other employees at Saks's Younkers division began to express concern over their job security as Saks had recently implemented a company–wide plan to consolidate its division headquarters. In response to its employees' concerns, Saks issued a letter to employees, dated October 27, 2000 ("the letter"), wherein Saks announced the adop-

tion of "a change of control severance plan for certain salaried associates." The unsigned letter, attributed to the Chairman and Vice Chairman of Saks, Inc., states from the outset that the company anticipated no circumstances that would cause a change of control, but notes that "we have associates who are distracted by the thought of such an event." To "diffuse further concerns," the letter states, "the Board has provided a plan that functions as an associate insurance policy, protecting against an unlikely but worrisome event." For the affected individuals, the letter explains:

> For you personally, were there to be a change of control or sale of a major business unit that caused the elimination of your position, a reduction in your pay, or a change of your location greater than 50 miles, you would be entitled to 26 weeks of salary.

Other than the above-quoted sentence, the letter contains no further information regarding the plan such as eligibility, claims procedures, or administration of the referenced plan. As well, the letter neither refers recipients to other documents, nor does the letter provide contact information for employees seeking additional details about the plan. Plaintiffs received nothing further from Saks pertaining to the change of control plan.

On October 1, 2002, Saks consolidated the Younkers division headquarters in Des Moines, Iowa, into the Carson Pirie Scott division headquarters in Milwaukee, Wisconsin. Because of the consolidation, many of the Younkers division's salaried employees lost their jobs, were required to accept a reduction in pay, or were relocated to a location greater than fifty miles from their previous place of employment. Plaintiffs contend that the consolidation was a change of control as described in the

letter, thus entitling them to the severance benefits described therein.

Although Plaintiffs received nothing but the letter, Saks had in fact adopted a formal plan document entitled the "2000 Change of Control and Material Transaction Severance Plan," ("the Plan") on September 13, 2000. Until Saks attached a copy of the plan to its memorandum in support of its Motion to Dismiss, however, Plaintiffs had never before seen this document. The Plan document contains detailed provisions regarding eligibility of employees, amount of benefits, criteria for benefits, claims procedures, and Plan administration.

Under the terms of the Plan document, a change of control does not include consolidation of Saks's various divisions, subsidiaries, or affiliates. Rather, a change of control occurs if Saks as a whole is sold, the company merges with another, or if there is a shift in the controlling majority on the board of directors during a two year period. If, however, Saks ceases to own the majority of outstanding voting stock of any of its subsidiaries, the Plan would terminate immediately, and without notice or consent of the Plan participants, with regards to the affected subsidiary.

The Plan document provides three circumstances under which a participant would be entitled to severance benefits in the event of a change of control. Section 3A provides, if:

(i) Participant's employment with the Employer (Saks or one of its subsidiaries) is terminated by the Employer as a result of a Reduction in Force as to Participant;

(ii) subject to subsection B. of this section, Participant's employment with the Employer is terminated by the Employer without Cause within two years after a Change of Control; or

(iii) Participant terminates Participant's own employment with the Employer for Good Reason within two years after a Change of Control.

In moving the Court to dismiss Plaintiffs' claims, Defendant attacks Plaintiffs' complaint on two separate grounds. First Defendant contends that the Court lacks subject matter jurisdiction over Plaintiffs' claims and asks the Court to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, Defendant contends that Plaintiffs have failed to state claims upon which relief can be granted under Rule 12(b)(6). Either theory for dismissal is premised upon Defendant's contention that the formal Plan adopted by Saks on September 13, 2000 is an employee welfare benefit plan that falls under the purview of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* As such, Defendant argues that Plaintiffs' state law claims are preempted by ERISA.

## II. SUBJECT MATTER JURISDICTION

Defendant's first argument for dismissal contends that the Court lacks subject matter jurisdiction in this case because Plaintiffs' state law claims are preempted by ERISA. This Court, as a court of limited jurisdiction, has a duty to assure itself that it has subject matter jurisdiction in every case. *See Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987). "Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990). As an initial matter, however, the Court notes that Defendant removed this case from state court. As with any removal, the removing party bears the

burden of establishing federal subject matter jurisdiction. *In re Business Men's Assurance Co.,* 992 F.2d 181, 183 (8th Cir. 1993) (citation omitted). If the Court lacks subject matter jurisdiction, removal was improper and the case should be remanded to state court. This, however, is not the case. Saks cites both diversity of citizenship (28 U.S.C. § 1332) and the presence of a federal question (§ 1331) as grounds for removal. Without more then, the Court could simply defer to Defendant's assertion of diversity of citizenship as the basis for subject matter jurisdiction, and the inquiry ends. The Court, however, does not believe the question is quite so simple.

▇▇▇ Although Defendant cites both § 1331 and § 1332 in removing this case, what is clear is that Defendant has premised removal on the contention that Plaintiffs' claims are preempted by ERISA. The ability of Congress to preempt state law stems from the Supremacy Clause of the United States Constitution. U.S. Const. Art. VI Cl. 2. *Symens v. SmithKline Beecham Corp.,* 152 F.3d 1050, 1053 (8th Cir.1998). Under any question of preemption, the focal point of the analysis is congressional intent. *See United of Omaha v. Business Men's Assur. Co. of Am.,* 104 F.3d 1034, 1039 (8th Cir.1997). In enacting ERISA, congress intended:

> "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."

*Id.* (quoting *New York Conference of Blue Cross v. Travelers Ins.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990))). To accomplish these goals, ERISA includes a broad sweeping provision that preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)] and not exempt under section 4(b) [29 U.S.C. § 1003(b)]." 29 U.S.C. § 1144(a). The expansive nature of ERISA's preemption provision confers what is referred to as "complete" preemption, whereby "[c]lauses of action within the scope of, or that relate to, the civil enforcement provisions of 502(a) are removable to federal court despite the fact the claims are couched in terms of state law." *Hull v. Fallon,* 188 F.3d 939, 942 (8th Cir.1999). Moreover, in the Eighth Circuit, the existence or non-existence of an ERISA plan itself is a jurisdictional question. *Kulinski v. Medtronic Bio–Medicus, Inc.,* 21 F.3d 254, 256 (8th Cir.1994).

▇▇▇ Given the preemptive and jurisdictional effects of the presence of an ERISA plan, the Court must first determine whether jurisdiction here is proper under ERISA before deferring to an assertion of diversity jurisdiction. In deciding whether the Court has jurisdiction over the subject matter in a given case, the Court may consider matters outside the pleadings. *Osborn,* 918 F.2d at 729. To determine the basis for jurisdiction in the present case, the Court must look beyond Plaintiffs' Complaint to the Plan document attached to Defendant's Motion to Dismiss.

## III. ERISA & PREEMPTION

### A. Effect of the October 27, 2000 Letter

▇▇▇ Before the Court may determine if Plaintiffs' claims are preempted by

ERISA, the Court must first determine whether the Plan document adopted by Saks established an ERISA benefits plan. Plaintiffs argue that because Saks provided Plaintiffs with only the October 27, 2000 letter, the Court should refuse to consider the formal plan document as establishing an ERISA plan. In response, Saks contends that the letter was a summary plan description as required by ERISA. *See* 29 U.S.C. § 1022. As a summary plan description, however, the letter is woefully inadequate.

ERISA requires that a summary plan description contain specific information, including:

* the name and type of the plan;
* the name and address of the agent for service of process;
* the name and address of the plan administrator;
* the plan's eligibility requirements;
* circumstances which may result in denial or loss of benefits;
* the source of the plan's financing;
* the plan year; and
* claims procedures and remedies available for redress of denied claims.

*Palmisano v. Allina Health Sys., Inc.,* 190 F.3d 881, 888 (8th Cir.1999); 29 U.S.C. § 1022. Several other requirements are also added by the regulations. *See Id.*; 29 C.F.R. §§ 2520.102–2, 102–3. The October 27, 2000 letter given to employees here fails as a summary plan description on every point except for an ambiguous reference to the type of plan at issue. As such, the letter cannot be deemed even a faulty summary plan description. *See Id.*

Although Saks violated ERISA's disclosure requirements by failing to provide Plaintiffs with a summary plan description, this has no bearing on whether Saks established a plan in the first place. The question presently before the Court, however, is whether Saks established an ERISA plan with the adoption of the formal plan document. The inadequacies of the October 27th letter as a summary plan description are irrelevant to this consideration. Rather, to consider the letter under the requirements of a summary plan description presupposes the existence of an ERISA plan. Restated, ERISA does not require an employer to provide a summary plan description until a plan has been established. Thus, until the Court determines that the Plan document established an ERISA benefit plan, considering the inadequacies of the letter amounts to putting the cart before the horse.

**B. Whether the Change of Control Plan is an ERISA Benefits Plan**

■ An ERISA employee welfare benefit plan is "any plan, fund, or program ... established or maintained ... for the purpose of providing for its participants [specified] benefits." 29 U.S.C. § 1002(1). *See Kulinski,* 21 F.3d at 256. The general standard for establishing a plan requires a written instrument that provides for one or more fiduciaries with authority to control the operation and management of the plan. *See* 29 U.S.C. § 1102. The Plan document provided by Saks meets this basic threshold. The Court then turns to the type of benefits at issue here. The benefits included under ERISA include severance benefits. *Kulinski,* 21 F.3d at 256 (citing *Wallace v. Firestone Tire & Rubber Co.,* 882 F.2d 1327, 1329 (8th Cir.1989)). For severance benefits to qualify as an ERISA plan, however, the severance package must " 'require [ ] an ongoing administrative program to meet the employer's obligation.' " *Crews,* 274 F.3d at 506 (quoting *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). The Court must, therefore, determine whether the Plan at issue

here requires an ongoing administrative scheme.

■ In considering whether payments require an ongoing administrative scheme, the Eighth Circuit has distilled four factors:

1) whether the payments are one-time lump sum payments or continuous payments;

2) whether the employer undertook any long-term obligation with respect to the payments;

3) whether the severance payments come due upon the occurrence of a single, unique event or any time that the employer terminates employees; and

4) whether the severance arrangement under review requires the employer to engage in a case-by-case review of employees.

*Id.* (citing *Emmenegger v. Bull Moose Tube Co.,* 197 F.3d 929, 934–35 (8th Cir. 1999); *Kulinski,* 21 F.3d at 256–58 (8th Cir.1994)).

■ Here, the severance payments are only triggered if Saks as a whole (rather than any subsidiary or affiliate company) is sold or merges with another company. As noted above, if Saks were to lose control of a subsidiary company, the Plan instantly terminates for that particular subsidiary. Payments are either lump sum or continuous, and Saks retains sole discretion to make this choice. Saks undertook no long term obligations with respect to the payments as the only time in which benefits would be triggered would be after a change of control, the window of eligibility is only open for the two years following a change of control, and Saks retains the option to make a lump sum payment. The payment obligations are initially triggered by the occurrence of a single event, namely the sale or other disposition of the entire company, but the actual determination of an individual employee's eligibility is triggered based on one of three occurrences following the change of control. The Plan document specifically excludes those employees who quit or are terminated prior to a change of control. After reviewing the first three *Crews* factors, the question remains close.

The fourth factor then, whether the plan requires a case by case review, is crucial in the Court's analysis of whether Saks undertook an ongoing administrative scheme in adopting the Plan. As noted, a change of control is a very specific event as defined in the plan, so no review is required to determine whether a change of control has occurred. Following a change of control, however, the Plan identifies three circumstances under which an employee would be entitled to benefits following a change of control. First, an employee is entitled to benefits if the employee is terminated because of a reduction in workforce. Although "reduction in force" is defined to include two possible situations: 1) the employee is laid off following a change of control; or 2) the employee is offered a new position that involves a reduction in pay *and* relocation more than fifty miles from the eliminated position's location. In either event, whether an employee is terminated due to a reduction in force requires looking at the individual employee's circumstances, but the review involves nothing more than establishing that the employee was laid off or demoted and relocated.

An employee is also be entitled to benefits following a change of control if the employee is terminated without cause within two years after the change of control. The Plan document defines "cause" to include an employees criminal conviction for any crime that materially discredits Saks or the offender's employing subsid-

iary. "Cause," as defined, further includes acts of fraud, dishonesty, immoral or unethical acts that reflect negatively on the company, but only after the employee is given written notice of the conduct and then provided with an opportunity to contest the allegations before Saks's chief executive officer. Lastly, "cause" includes "willful and continual material breaches of the material terms of the Participant's employment," or willful violations of company policy that would always result in discharge after the first occurrence. Here, an individual review of the employee's circumstances is necessary to determine whether the employee was terminated without cause.

Lastly, an employee is entitled to severance benefits if the employee quits for good reason within two years after the change of control. The Plan defines only two "good reasons" for the employee to terminate his or her own employment, a reduction in pay or a relocation of more than fifty miles from the employment location on the first day following the change of control. As salary and location are both readily ascertainable, the question of whether the employee had good reason for terminating her employment is almost identical to the reduction in force review.

After considering the circumstances under which an employee would be entitled to severance benefits, the Court finds that the large majority of cases do not require a detailed case by case review. Regardless, the Plan does not simply mandate payment to all employees following a change of control. Accordingly, determining eligibility involves more than a simple mechanical determination; the administrator must review the particular circumstances of each individual employee based on the identified eligibility criteria. As the Eighth Circuit noted in *Kulinski:*

> [s]imple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for the level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.

*Kulinski,* 21 F.3d at 257.

In *Kulinski,* the circuit court held that a "golden parachute" severance agreement was not an ERISA plan where the company's payment obligation came due when the employee resigned for whatever the employee deemed a good reason following a change of control. *Id.* at 258. As the court described the agreement, "once a hostile takeover occurred and Kulinski resigned . . . for what he regarded as a good reason, there was nothing for the company to decide, no discretion for it to exercise, and nothing for it to do but write a check." *Id.* In deciding that the severance agreement was not an ERISA plan, the court in *Kulinski* distinguished the agreement from cases in which courts had found that a severance plan amounted to an ERISA plan. *Id.* at 257–58. (citing *Simas v. Quaker Fabric Corp. of Fall River,* 6 F.3d 849, 851 (1st Cir.1993) (ERISA plan found under statute that required graduated severance payments based on length of service, but only to employees who would be eligible for unemployment compensation); *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1321 (9th Cir.1992) cert. denied, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993) (administrative scheme found where severance benefits offered to those not offered "substantially equivalent employment"); *Pane v. RCA Corp.,* 667 F.Supp. 168, 170–71 (D.N.J.1987), aff'd 868 F.2d 631 (3rd Cir.1989) (administrative scheme found where employee was entitled to benefits only in certain instances such as termination without cause)). As with the case at bar, the common element in the

cases compared in *Kulinski* is that determining eligibility requires reviewing the individual circumstances of each employee against specific benefit criteria. The Court therefore finds that the change of control plan adopted by Saks required an ongoing administrative scheme, and is therefore a benefit plan covered under ERISA.

## C. Preemption

Having found that the change of control Plan adopted by Saks is an ERISA benefits plan, the Court must determine if Plaintiffs' state law claims are preempted by the Act. Under ERISA's preemption provision, any claim for benefits under an ERISA employee benefit plan must come under the Act's civil enforcement scheme, 29 U.S.C. § 1132. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The Court must, therefore, review whether Plaintiffs' claims relate to the Plan at issue here.

A law "relates to" an employee benefit plan under ERISA if it (1) expressly refers to, or (2) has a connection to such a plan. *Eckelkamp v. Beste,* 315 F.3d 863, 870 (8th Cir.2002) (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Here, Plaintiffs assert state law causes of action for breach of contract, promissory estoppel, fraudulent misrepresentation, and a claim under the Iowa Wage Payment Collection Law, Iowa Code Chapter 91A. The claims arise from Plaintiffs' claims for benefits pursuant to the October 27, 2000 letter, after the consolidation of Saks's Younker's division. As found above, the letter was distributed in connection with the change of control Plan adopted by Saks. Plaintiffs' claims, therefore, are essentially claims for benefits under the plan

or challenges to Saks's administrative and fiduciary responsibilities with regards to the Plan. Plaintiffs' claims, therefore, have direct connections to the Plan and are necessarily preempted by ERISA. Accordingly, the Court's subject matter jurisdiction based on diversity of citizenship is no longer relevant. Subject matter jurisdiction is proper based on the presence of a federal question. Regardless, subject matter jurisdiction is proper and Defendant's Motion to Dismiss for lack of jurisdiction is denied.

## IV. FAILURE TO STATE A CLAIM

As the Court has found that Plaintiffs' state law claims are preempted by ERISA, the Court cannot grant relief on these claims and they must be dismissed. Defendant's Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6) is granted. At this stage of the proceedings, however, dismissal of Plaintiffs' entire case is improper. Plaintiffs are, therefore, granted fourteen days leave to file an amended complaint stating causes of action under ERISA.

## V. ORDER

Defendant's Motion to Dismiss is denied in part and granted in part. As the Court has subject matter jurisdiction over Plaintiffs claims under 28 U.S.C. § 1331, Defendant's 12(b)(1) challenge is denied. The Court finds that Plaintiffs' state law claims are preempted by ERISA. Defendant's motion to dismiss for failure to state a claim is granted and Plaintiffs' claims are hereby dismissed. Plaintiffs are granted fourteen (14) days leave to file an amended complaint alleging causes of action under ERISA.

IT IS SO ORDERED.