Christopher BAXTER, a minor, By and Through his Next Friend and Mother, Sandra BAXTER and Sandra Baxter, Appellant,

v.

Charlene F. LYNN and Allstate Insurance Company and,

Central States, Southeast and Southwest Areas Health and Welfare Fund, Appellee.

No. 88–2647.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1989.

Decided Sept. 22, 1989.

Rehearing and Rehearing En Banc Denied Nov. 7, 1989.

---

James K. Blickhan, Kansas City, Mo., for appellant.

Anita M. D'Arcy, Chicago, Ill., for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSON,* Senior District Judge.

HEANEY, Senior Circuit Judge.

Christopher Baxter and his mother, Sandra Baxter, appeal from an order of the district court granting summary judgment in favor of Central States, Southeast and

* The HONORABLE WILLIAM C. HANSON, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

Southwest Areas Health and Welfare Fund (the Fund). We affirm in part and reverse in part.

## BACKGROUND

In 1985, Christopher Baxter, a passenger in his grandmother's car, was injured when the car collided with a vehicle driven by Charlene Lynn. Christopher's father, Kenneth Baxter, was a participant in an employee benefit plan regulated by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1985). Pursuant to the plan, the Fund paid medical expenses totaling $23,305 on behalf of Christopher. Lynn, the driver of the second car, did not have insurance. Christopher's grandmother, Alice Campbell, had an insurance policy issued by Allstate Insurance Company, a provision of which provided for $25,000 of coverage to the vehicle's occupants if involved in an accident with an uninsured motorist. The policy also provided for medical payments coverage of $5,000.

In 1986, the Baxters filed suit against Lynn and Allstate in state court. Allstate interpled the Fund as its plan included a clause subrogating the Fund to the Baxters' rights of recovery from third parties. Allstate did not contest its duty to pay the policy limit, deposited the $30,000 with the court and has had no further involvement in the case. In 1987, the Fund removed this case to federal court pursuant to 28 U.S.C. § 1441 (1982), and sought a declaratory judgment entitling it to full satisfaction of the purported subrogation lien from the monies deposited by Allstate.

The issue in this case involves the interpretation of the Fund's subrogation provision in paragraph 17.14 of the plan. The Fund argues that this paragraph created a subrogation lien for the amount of the benefits it paid to the Baxters against the uninsured motorist policy benefits paid by Allstate. The Baxters argued that neither state common law nor the plan allows such subrogation. The district court held that common law restrictions on subrogation did not apply here as the law of ERISA preempted any state law which attempted to regulate ERISA benefit plans. It also held that the trustee's interpretation of the subrogation clause was not arbitrary or capricious and granted summary judgment in favor of the Fund.

## DISCUSSION

### I. ERISA PREEMPTION

The first issue presented is whether ERISA preempts the application of state subrogation law to this employee benefit plan. ERISA comprehensively regulates employee pension and welfare plans. Title 29 U.S.C. § 1002(1) defines an employee welfare benefit plan as any fund or program through which an employer provides employees "through the purchase of insurance or otherwise" with "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." The statute imposes participation, funding, and vesting requirements on pension plans and sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibilities, for both pension and welfare plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983).

Section 514(a) of ERISA preempts "any and all State laws in so far as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a).[1] The United States Supreme Court has affirmed the broad preemptive scope of ERISA and the prohibition of even indirect state action relating to self-funded employee benefit plans. *See e.g., Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985); *Shaw*, 463 U.S. at 98–99, 103 S.Ct. at 2900–01; *Alessi*

---

1. Section 514(a) provides:

    Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) and not exempt under section 1003(b) of this title. 29 U.S.C. § 1144(a).

*v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981). The express preemption provision of ERISA is deliberately expansive, and it is designed to establish pension plan regulation as exclusively a federal concern. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). An exception to this general preemption provision is found in 29 U.S.C. § 1144(b)(2)(A).[2] This section, known as the "insurance saving clause," exempts state laws regulating insurance, banking, or securities from the preemption clause.

The Baxters argue that neither common law nor paragraph 17.14 allows subrogation against uninsured motorist benefits. The Fund asserts that state law regarding subrogation is irrelevant as ERISA preempts its application to this employee benefit plan. Thus, the issue here is whether ERISA has preempted the common law of subrogation. We agree with the district court that the question must be answered in the Fund's favor.

■ To analyze the preemption claim in this case, we first determine whether the state law in question "relates to" employee benefit plans within the meaning of section 514(a). *Shaw*, 463 U.S. at 96, 103 S.Ct. at 2899. Such a relationship exists when the state law in question "has a connection with or reference to" an employee benefit plan. *Pilot Life Ins. Co.*, 481 U.S. at 47, 107 S.Ct. at 1553; *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900. This phrase is not to be limited to those state laws which deal specifically with ERISA plans or with subject matters covered by ERISA plans. *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900. Thus, any provision of state law which conflicts with a proper provision of an ERISA plan must give way to the latter. *Davis v. Line Constr. Benefit Fund*, 589 F.Supp. 146, 149 (W.D.Mo.1984).

■ In the present case, the Baxters allege that under state common law, the Fund is not entitled to subrogation because it had a contractual obligation, independent of Allstate's obligation, to pay for the medical expenses arising from the automobile accident. The district court held that any state statutory or common law which arguably curtailed the Fund's claimed right of subrogation had a connection with the employee benefit plan and thus "related to" the plan. We agree. Any state law prohibiting employers from structuring their employee benefit plans in a manner that requires reimbursement in the event of recovery from a third party creates a conflict with paragraph 17.14 of the Fund's employee benefit plan. Thus, the common law clearly "relates to" the employee benefit plan in this case. *Accord United Food & Commercial Workers v. Pacyga*, 801 F.2d 1157, 1160 (9th Cir.1986) (Arizona antisubrogation law relates to ERISA plan); *Davis*, 589 F.Supp. at 149 (Missouri law of subrogation relates to ERISA plan); *Hunt by Hunt v. Sherman*, 345 N.W.2d 750, 753 (Minn.1984) (Minnesota subrogation law relates to ERISA plan).

This holding does not end the inquiry. We must next determine whether the applicable state law escapes preemption via the insurance saving clause. *See Pilot Life Ins.*, 481 U.S. at 48, 107 S.Ct. at 1553; *Metropolitan Life Ins.*, 471 U.S. at 740, 105 S.Ct. at 2389. According to the Supreme Court, if one gives a common sense reading to the language of the insurance saving clause, only laws specifically directed toward the insurance industry are exempt from ERISA preemption. *Pilot Life Ins.*, 481 U.S. at 50, 107 S.Ct. at 1554. The Court also held that only laws that regulate insurance within the McCarran–Ferguson Act's definition of the "business of insurance" fall within the scope of the insurance saving clause. *Metropolitan Life Ins.*, 471 U.S. at 742–43, 105 S.Ct. at 2390–91. These factors are: (1) whether a particular practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of

---

2. The insurance saving clause provides:
Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve a person from any law of any State which regulates insurance, banking, or securities.
29 U.S.C. § 1144(b)(2)(A).

the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. *Id.* at 743, 105 S.Ct. at 2391.

■ We agree with the district court that the law of subrogation, while generally applicable to insurance contracts, is not specifically directed toward the insurance industry. While laws regulating subrogation rights apply in part to holders of insurance, they do not regulate the insurance industry directly. Application of differing state subrogation laws to plan providers throughout the United States would frustrate ERISA's uniform treatment of benefit plans. Thus, a common sense reading of the insurance saving clause indicates that common law rules on subrogation are not the type of state insurance regulations intended to survive the broad scope of ERISA preemption. *See also Minnesota Chamber of Commerce & Indus. v. Hatch,* 672 F.Supp. 393, 399 (D.Minn.1987) (Minnesota statute requiring employers who provide self-funded health benefit plans to file security or surety bond is not directed exclusively toward insurance industry).

Furthermore, we find, as did the district court, that the three-part analysis under the McCarran–Ferguson Act yields a similar result. The practice of subrogation does not transfer the risk from a policyholder to his or her insurer. Rather, it limits the recovery available to the policyholder by preventing a double recovery. While we believe that subrogation rights play an integral role in defining the relationship between Christopher Baxter and the Fund, we believe that the laws of subrogation are applied in many factual circumstances unrelated to the insurance industry. *Accord Davis,* 589 F.Supp. at 149; *Hunt,* 345 N.W.2d at 753. *Contra United Food Workers,* 801 F.2d at 1161 (Arizona

anti-subrogation statute, although not limited to insurance industry, sufficiently regulates insurance industry to meet McCarran–Ferguson test).

■ Even if the laws on subrogation constituted insurance regulations, the deemer clause, codified at 29 U.S.C. (§ 1144(b)(2)(B)), prevents their application to self-funded employee benefit funds.[3] An employee benefit plan cannot be deemed to be an insurance company "for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B). In *Metropolitan Life,* 471 U.S. 724, 105 S.Ct. 2380, the Supreme Court held that the deemer clause protected self-funded employee benefit plans from state insurance regulations but allowed state regulation of plans insured by independent insurance companies. *Id.* at 747, 105 S.Ct. at 2393. Thus, if the Fund purchased insurance from an independent insurance company, a subrogation clause in the insurance contract could be subject to state regulation. In the present case, however, the Fund is completely self-insured, and as such, cannot be subject to even indirect regulation. *Accord United Food & Commercial Workers,* 801 F.2d at 1161–62 (state subrogation statute did not apply to self-funded employee benefit plan); *Minnesota Chamber of Commerce,* 672 F.Supp. at 399 (same). Thus, any state subrogation law cannot be applied to the self-funded Central States employee benefit plan. We hold, therefore, that any such state law is preempted by ERISA.

## II. INTERPRETATION OF THE PLAN

The Baxters argue that the subrogation clause does not give the Fund the right to monies paid into the court by Allstate.

---

3. The deemer clause provides:
   Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.
   29 U.S.C. § 1144(b)(2)(B).

The subrogation provision, paragraph 17.14 of the plan, provides:

> In the event the Fund pays benefits on behalf of any Covered Individual, for illness or injury for which the Covered Individual has the right to recover, the Fund shall be subrogated to the Covered Individual's rights of recovery, to the extent of benefits paid, against any person or entity who may be responsible. The Covered Individual shall execute and deliver instruments and papers, as requested by the Fund, and shall do nothing to prejudice the Fund's right of subrogation. The Fund may initiate an action in the name of the Fund or the Covered Individual to assert its right of subrogation.
>
> The amount of the Fund's subrogated interest shall be deducted first from any recovery by or on behalf of the Covered Individual. The Fund will not be responsible for the Covered Individual's attorneys fees or other costs unless the Fund has agreed in writing to pay such fees or costs.

The Baxters assert that this paragraph should be interpreted to mean that the Fund's subrogation rights extend only to recoveries made from the person who caused the injury, Charlene Lynn. As Allstate covered Baxter's grandmother and not the woman driving the second vehicle, it is arguably not the entity responsible for Christopher's injuries. The Fund, however, interprets this paragraph as applicable to *any* recovery made by or on behalf of Christopher Baxter, regardless of the source of that recovery.

The district court held that when interpreting the language of a plan document which is susceptible of more than one interpretation, the plan administrator's interpretation will prevail unless it is arbitrary, capricious or made in bad faith, relying on this Court's holding in *Short v. Central States, Southeast & Southwest Areas Pension Fund*, 729 F.2d 567 (8th Cir.1984). This standard for review, however, has since been modified by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, — U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Bruch*, several for-mer Firestone employees brought suit alleging that, under Firestone's employee benefit plan, it was required to pay them severance benefits. The Supreme Court held that a denial of benefits under ERISA is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine one's eligibility for benefits or to construe the terms of the plan. 109 S.Ct. at 956. The termination pay plan in *Bruch* did not grant discretionary power to the plan administrator to interpret the plan. In particular, the plan did not grant the administrator discretionary power to interpret the relevant phrase "reduction in work force." Because the plan was silent with respect to the administrator's permissive interpretive power, the Court held that a *de novo* standard was appropriate to review the administrator's acts.

██ The *Bruch* standard is clearly applicable here. If the Fund's plan gives its trustees the discretion to interpret the meaning of the subrogation clause, we agree with the district court that this interpretation is subject to the arbitrary and capricious standard of review. If no such authority is provided for in the plan, however, the dispute must be resolved by a *de novo* review of the plan's terms and other manifestations of the parties' intent. *Bruch*, 109 S.Ct. at 955. "In other words, unless the plan language specifies otherwise, courts should construe any disputed language 'without deferring to either party's interpretation.'" *Wallace v. Firestone Tire & Rubber Co.*, 882 F.2d 1327, 1329 (8th Cir.1989) (citing *Bruch*, 109 S.Ct. at 955).

Case law following *Bruch* indicates that circuit courts are beginning to determine how specific plan language must be in order to constitute a grant of discretionary authority as contemplated by the Supreme Court in *Bruch. See, e.g., Wallace*, 882 F.2d at 1329 (plan provisions giving trustees the right to change policy terms and instructing employees to consult personnel representatives for clarification of policy terms did not constitute a grant of additional discretion to interpret terms of the plan); *Lakey*

*v. Remington Arms Co., Inc.,* 874 F.2d 541, 544 (8th Cir.1989) (provision of severance pay plan allowing employer to "interpret the more usual situations that may arise in the application of the policy" constituted grant of discretionary authority to interpret ambiguous plan terms); *Burnham v. Guardian Life Ins. Co. of America,* 873 F.2d 486, 489 (1st Cir.1989) (*de novo* review applied to decision of trustees to deny benefits because trustees had no discretion to interpret meaning of "full-time employee"); *Boyd v. Trustees of United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989) (plan provision giving trustees authority to make "full and final determinations as to all issues concerning eligibility for benefits" constituted grant of discretionary authority reviewable under arbitrary and capricious standard); *Bali v. Blue Cross and Blue Shield Ass'n,* 873 F.2d 1043, 1047 (7th Cir.1989) (plan language giving administrator discretion to request additional information from employee to prove disability limited judicial review of such a request to arbitrary and capricious standard); *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 39 (11th Cir.1989) (arbitrary and capricious standard of review applicable when trust document conferred on trustees "full power to construe the provisions of [the] Trust").

It is clear that the Supreme Court borrowed its standard of review from general common law principles. Before the passage of ERISA, courts reviewed the acts of plan administrators under a *de novo* standard where the terms of the instrument did not provide for the permissive exercise of a plan administrator's power. *Lowry v. Bankers Life & Casualty Retirement Plan,* 871 F.2d 522, 524 (5th Cir.1989). Thus, if an action is mandatory under the plan or if the plan is silent with regard to the administrator's role, the action taken should be reviewed the same as any other contract dispute. *Id.* Language requiring trustees to make a final determination of an employee's eligibility under the plan does not necessarily confer discretionary authority to render decisions with regard to ambiguous provisions of the plan. *Accord*

*Dzinglski v. Weirton Steel Corp.,* 875 F.2d 1075, 1079 (4th Cir.1989) (authority to determine whether employee met eligibility standards under disability benefits plan does not constitute discretionary authority to grant or deny benefits).

Paragraph 16.01 of the Fund's plan provides that the trustees have the final authority to determine all matters of eligibility for the payment of claims. As noted above, this section merely describes the trustees' mandatory role in accepting or rejecting claims submitted to the Fund. It does not grant to the trustees the authority to construe ambiguous terms. We have carefully reviewed the plan and could find no other provision in the plan specifically giving the trustees the discretionary power to interpret the meaning of its subrogation clause. Thus, we hold that the Baxters' claim must be reviewed under the *de novo* standard of *Bruch.*

We therefore affirm the district court with regard to the preemption issue and reverse with regard to the interpretation of paragraph 17.14 and remand the case for consideration consistent with this opinion.