**Michael S. POMPE Plaintiff,**

v.

**CONTINENTAL CASUALTY CO., and HAYES WHEELS INTERNATIONAL, Defendants.**

No. 99–4218–CV–C–9–5.

United States District Court,
W.D. Missouri,
Central Division.

Sept. 8, 2000.

an Illinois Corporation, Hayes Wheels International Inc., Company Paid Long Term Disability Plan, defendants.

## MEMORANDUM & ORDER

LAUGHREY, District Judge.

This lawsuit was filed by Plaintiff Michael Pompe ("Pompe") to recover disability benefits pursuant to his rights under the Hayes Wheels International, Inc. Paid Long–Term Disability Plan ("Plan"). The Plan was created by Pompe's employer, Hayes Wheels International, Inc. ("Hayes"). Continental Casualty Company ("Continental") issued the insurance policy which underwrote the disability benefits guaranteed by the Plan. All parties agree that the Plan is a welfare benefit plan within the meaning of ERISA. The parties have also stipulated that the administrative record, which was submitted in support and in opposition to Defendants' motion for summary judgment, is the only evidence that would be presented at a hearing. The parties agree that the Court should conduct its administrative review based on that record.[1]

## I. Introduction

Pompe was employed by Hayes at its Sedalia, Missouri, plant starting on December 1, 1996, as a Materials Controller. Pompe contends that this position required strenuous work, operating heavy equipment, loading and unloading rolls of steel from trucks, manually loading material on the production lines, and moving large pallets on a daily basis. As a member of the materials department, he was also subject to being transferred to different jobs within his department as Hayes directed. Pompe contends that these positions also required frequent lifting and bending.

Mark A Buchanan, Sprenger & McCreight, L.C., Kansas City, MO, for Michael S. Pompe, plaintiffs.

Gerald A. King, Armstrong, Teasdale, Schlafly & Davis, Julie A. Elston, Shughart, Thomson & Kilroy, P.C., Kansas City, for Continental Casualty Company,

1. Because the Court is resolving this case on the merits, it is not necessary to address the Defendants' motions for summary judgment which are therefore denied as moot. For a discussion of the difference between a ruling on a summary judgment motion in this ERISA context and deciding a case on the merits under ERISA, *see Kearney v. Standard Ins. Co.,* 175 F.3d 1084 (9th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999).

Pompe has a long history of problems with diabetes. After his employment began, Pompe's physicians diagnosed him with proliferative diabetic retinopathy, resulting in recurrent bleeding in his eyes. Subsequently, he underwent multiple laser surgery treatments which stopped the bleeding, resulting in notable improvement in his eyes' functioning. Pompe's treating physicians determined that, although Pompe's eyes had been stabilized and were functioning normally, there was a continuing risk of recurring bleeding. Further, if such bleeding recurred, additional laser treatments would render little, if any, improvement.

In June 1998, because of this risk of recurring retinal bleeding, Pompe's treating surgeon, Dr. Mari Ann Keithahn, M.D., placed him on a lifting restriction of no more than ten pounds. Dr. Keithahn further advised Pompe that he should not continue his job as a Materials Controller, but instead should seek a desk job. Another of Pompe's treating physicians, Dr. Mark Cox, M.D., concurred in this opinion.

Pompe communicated his physicians' instructions to Hayes. Hayes did not have a desk job for Pompe, so Hayes placed Pompe on short-term disability, tacitly recognizing that the ten-pound lifting restriction prevented Pompe from performing his job as a Materials Controller. This was confirmed in a letter dated January 19, 1999, in which Hayes stated: "According to your file information we received medical recommendations in June 1998 indicating that you could not perform the essential functions of your job responsibility due to medical restrictions." (Doc. AR0021) When Pompe's short-term disability benefits ran out, Pompe made a claim for long-term total disability benefits under the Plan. On February 22, 1999, Continental denied Pompe's claim for long-term disability benefits. Pompe appealed this decision, but on July 16, 1999, Continental denied Pompe's appeal, prompting this suit.

## II. Standard of Review

Normally, the Court spends little time discussing the standard of review because in most areas of the law its parameters are well established. Not so with ERISA. When Congress enacted ERISA and authorized district courts to review decisions made by plan administrators, it did not identify the appropriate standard of review. After the circuits split on the issue, the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), attempted to fill in the gap left by Congress. Recognizing that plan administrators had a fiduciary obligation to claimants and all other participants in the plan, the Supreme Court concluded that trust principles would be helpful in crafting the appropriate standard of review. The court held that trust principles dictated that a *de novo* standard of review was required unless the plan gives "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948. If the plan administrator is given such discretion, the standard of review is arbitrary and capricious/abuse of discretion.[2] *See also Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 640–41 (8th Cir.1997); *Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th Cir.1996).

 The Defendants claim that the following Plan language is sufficient to trigger the abuse of discretion standard articulated in *Firestone:* "If any provision of the Plan is unclear or ambiguous, the insured's company has the right to interpret the plan and resolve the problem." Summary Plan Description (SPD) (Ex., Continental's Mot. for Summ. J.). Pompe, however, contends that the terms of the Plan are neither unclear or ambiguous. Ac-

---

**2.** The Eighth Circuit has expressly found that the abuse of discretion standard and the arbitrary and capricious standard are synony-

mous and can be used interchangeably. *Sahulka v. Lucent Techs.,* 206 F.3d 763, 766 (8th Cir.2000).

cording to Pompe, the dispute is not about the interpretation of the Plan, but rather whether Pompe's condition rendered him eligible for benefits. Because the Plan gives no discretion to the administrator to determine eligibility for benefits, Pompe concludes that the *de novo* standard applies.

Before turning to the arguments raised by the parties, the Court considers a potentially dispositive issue mentioned in *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569 (8th Cir.1992) and not directly addressed since by the Eighth Circuit. This issue concerns what standard should apply to findings of fact made by a plan administrator.[3]

In *Pierre v. Connecticut General Life Ins. Co./Life Ins. Co. of N. Am.,* 932 F.2d 1552 (5th Cir.), *cert. denied,* 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991), the Fifth Circuit held that *Firestone* defined the standard of review applicable to plan interpretations but left open what standard of review applied to factual determinations made by the plan administrator. Relying on trust principles, practical considerations and a narrow reading of *Firestone,* the Fifth Circuit concluded that factual determinations made by plan administrators were always subject to the deferential abuse of discretion standard and never subject to a *de novo* review, even if there is no language in the plan granting any discretion to the plan administrator on any subject. *Pierre,* 932 F.2d at 1563. No other circuit has adopted the approach of the Fifth Circuit. The Second, Third, Fourth, Sixth, Seventh and Ninth Circuits apply the *de novo* standard to both factual determinations and plan interpretations unless discretion is granted to the plan administrator as described in *Firestone. Rowan v. Unum Life Ins. Co. of Am.,* 119 F.3d 433, 435 (6th Cir. 1997); *Ramsey v. Hercules Inc.,* 77 F.3d 199, 204 (7th Cir.1996); *Luby v. Teamsters Health, Welfare, and Pension Trust Funds,* 944 F.2d 1176, 1183–84 (3rd Cir.

1991); *Reinking v. Philadelphia Am. Life Ins. Co.,* 910 F.2d 1210, 1213–14 (4th Cir. 1990); *Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243 (2nd Cir.1999).

In *Cox v. Mid–America Dairymen, Inc.,* the Eighth Circuit made a passing reference to *Pierre.* After first finding that the ERISA plan at issue gave the plan administrator discretion to resolve both factual and plan interpretation disputes, the Eighth Circuit went on to say:

> The plan's specificity in this regard permits us to avoid an issue that has recently divided other circuits—whether the *de novo* or the deferential standard of review applies to a trustee's fact-based benefits determination if the plan does not expressly provide that such determinations are discretionary. *See Pierre v. Connecticut Gen. Life Ins.,* 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) (Justice White dissenting from the denial of certiorari). Our circuit has apparently sided with those adopting the deferential standard of review. *See Oldenburger v. Central States, S.E. and S.W. Areas Teamster Pension Fund,* 934 F.2d 171, 173 (8th Cir.1991).

*Cox,* 965 F.2d at 571, n. 2.

Because this statement in *Cox* is *dicta,* it is not controlling. It is also respectfully noted that *Oldenburger* did not discuss the same issue raised in *Pierre* because the plan in *Oldenburger,* as in *Cox,* granted broad discretion to the plan administrator. Finally, the weight of authority now seems to be squarely and persuasively contrary to *Pierre* and the Court doubts that the Eighth Circuit will follow the Fifth Circuit on this question.

Because *Cox* does not provide an easy answer to what standard of review is applicable, the Court returns to Pompe's argument that the *de novo* standard applies because the Plan gives the administrator discretion to interpret ambiguous terms in

---

**3.** A central issue in this case is whether Pompe's job as a Material's Controller re-

quired him to lift in excess of ten pounds, clearly a question of fact.

the Plan, but does not expressly give the administrator discretion to determine eligibility. The Court rejects this argument for the same reason that the Court concluded that *Firestone* established only one framework for deciding the standard of review regardless of whether the issue was one of fact or plan interpretation.

The controlling language in *Firestone* provides "[w]e hold that a denial of benefits under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits *or* to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. 948 (emphasis added). First, the Supreme Court states that it is setting the standard for the denial of benefits not the standard for fact determination or plan interpretation or disability determinations. If the Supreme Court intended there to be multiple standards depending on the nature of the administrator's decision, one would have expected the Supreme Court to use less inclusive language. Second, the Supreme Court used the disjunctive, suggesting that the presence of either finding would trigger the abuse of discretion standard for the plan administrator's decisions. This result is also most practical because it creates a single standard of review, avoiding the problem of precisely defining what is a plan interpretation and what is a factual determination. Eligibility determinations and plan interpretations are often intertwined such as in this case where the question is whether Pompe is totally disabled because he is not able to perform the substantial and material duties of his job. The space between an eligibility determination and a plan interpretation is diffuse. To require the courts to draw atomistic distinctions would produce protracted litigation and make it difficult to predict outcomes.

Nor is the Court persuaded that *Baxter v. Lynn*, 886 F.2d 182 (8th Cir.1989), requires a *de novo* review when a plan gives the administrator discretion to interpret the plan but is silent as to eligibility determinations. *Baxter* merely decided that a plan which required a plan administrator to determine eligibility did not give discretionary authority to the plan administrator to interpret the terms of the plan. "As noted above, this section merely described the trustees' mandatory role in accepting or rejecting claims submitted to the Fund. It does not grant the trustees the discretionary authority to construe ambiguous terms." *Id.* at 188. Furthermore, *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1079 (4th Cir.), *cert. denied,* 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989) the authority cited in support of the *Baxter* decision, only held that the *de novo* standard applied because the plan in that case gave no discretion to the plan administrator. For all these reasons, the Court concludes that the applicable standard of review to this case is abuse of discretion.[4]

### III. Discussion

#### A. Long–Term Total Disability Benefits

To qualify for Total Disability benefits, Pompe was required to establish that because of injury or sickness he was

(1) continuously unable to perform the substantial and material duties of [his] regular occupation.

(2) under the regular care of a licensed physician other than [himself] and

---

**4.** The Court does not consider whether the abuse of discretion standard should be modified in this case because the Plan is administered by an insurance company which may have a conflict of interest. It is responsible to its shareholders who expect a profit and to all the beneficiaries of the plan to whom the insurance company owes a fiduciary duty. *See, Armstrong v. Aetna Life Ins. Co.,* 128 F.3d 1263 (8th Cir.1997); *Woo v. Deluxe Corp.,* 144 F.3d 1157 (8th Cir.1998); *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377 (3rd Cir.2000). The parties have not suggested that the gateway requirements established in *Woo* are present, and in their absence, the sliding scale standard for abuse of discretion is not applicable.

(3) not gainfully employed in any occupation for which [he is] or [he becomes] qualified by education, training or experience.

Each of these requirements must be satisfied during a 180–day waiting period and the first 24 months of benefit payments. The parties agree that Pompe met the second and third requirements. The sole dispute concerns the first requirement, whether Pompe was continuously unable to perform the substantial and material duties of his occupation during the relevant time period.

■ Continental asserts that the Plan administrators were reasonable in concluding that Pompe was able to perform the substantial and material duties of his job because Pompe's job as a Materials Controller did not require him to lift ten pounds manually, thus his medical restriction did not interfere with his ability to perform his regular occupation. Continental also argues that its Long–Term Disability Policy does not insure against future injuries. Continental's argument seems to suggest that because Pompe's retinopathy is not currently causing his eyes to bleed and is not currently distorting his vision, he cannot be totally disabled within the meaning of the policy, even if his continued employment as a Materials Controller would likely cause him to bleed in his eyes, risking permanent blindness. Neither the law nor the administrative record supports either conclusion.

The administrative record shows that early in the claims process Continental was aware of Pompe's treatment for diabetic eye problems. Its letter denying Pompe's claim also shows that it was aware Dr. Keithahn had restricted Pompe to lifting no more than ten pounds. Further, there is nothing in that denial letter to suggest that Continental believed Dr. Keithahn's restriction was medically unwarranted, or that Pompe's job did not require him to lift more than ten pounds on a regular basis. Instead, the letter simply states that "the treating doctors' evaluation and medical records along with

the medication regimen and treatment plan fail to support a disabling condition."

On March 18, 1999, Pompe responded to the denial of benefits. Among other things, he explained that Hayes' Human Relations Manager, Sam Corpe, had informed him that Dr. Keithahn's ten-pound limitation rendered him unable to perform his position as Materials Controller. To corroborate this allegation, Pompe provided Continental a letter from Corpe. It acknowledges that Pompe provided "medical recommendations in June 1998 indicating that [he] could not perform the essential functions of [his] job responsibility due to medical restrictions." Corpe's letter further explained that no full-time light duty positions were available to accommodate Pompe's medical condition.

Nonetheless, having reviewed the file, Continental's Appeal Committee determined that benefits should be denied. In its July 16, 1999, letter, the Appeal Committee wrote:

Your occupation requires that you are responsible for receiving materials, movement of materials to facilitate the manufacturing areas and monitoring plant inventory of product. This requires that you must be able to operate and use a forklift and crane. The physical demands of your occupation indicate that for a majority of your workday (40%—60%) you are required to lift 10 to 20 pounds. To a lesser extent of your workday (up to 20%), you lift 50 to 100 pounds. You are required to stand, climb, stoop, kneel, etc., which would place your occupation within a light to medium duty level.

There is nothing in the July 16, 1999, letter to suggest the Appeal Committee believed that all lifting was done by a fork lift and no manual lifting was required. The letter suggests otherwise. Also absent is any mention of the ten-pound lifting restriction placed on Pompe by Dr. Keithahn. The letter does note Dr. Cox's opinion that "since you have intermittent bleeding of the eyes, it would be in your

best interest to have a job that did not require heavy bending or lifting, preferably a desk job." The letter dismisses this opinion, stating only that "The policy does not insure potential or future risks."

Even under a deferential review for abuse of discretion, these facts demonstrate that the Plan administrators were arbitrary and capricious in concluding that Pompe was able to perform the substantial and material duties of his job. The Appeal Committee's opinion itself acknowledged that Pompe's job required him to lift objects in excess of ten pounds during the majority of his working day, and to lift much heavier objects during 20 percent of his day. As such, the ten-pound lifting restriction ordered by Dr. Keithahn would clearly disqualify Pompe from performing the "substantial and material duties of his occupation."

▇ The Appeal Committee may have neglected to consider Dr. Keithahn's restrictions on Pompe, despite having the information before them. In such case, the Appeal Committee's decision would be arbitrary and capricious, having overlooked such an important medical restriction from a treating physician. The second possibility is that the Appeal Committee considered Dr. Keithahn's orders, but for some undisclosed, and therefore unknown reason, disagreed with Dr. Keithahn. In the absence of a "reasoned explanation," however, the denial of benefits protected by ERISA cannot be upheld even under an abuse of discretion standard. *See Birdsell v. United Parcel Serv. of Am., Inc.*, 94 F.3d 1130, 1133 (8th Cir.1996).

While Continental now argues that the substantial and material duties of Pompe's occupation did not, in fact, require lifting objects more than ten pounds, this argument is at odds with the Appeal Committee's acknowledgment that Pompe's job required lifting objects heavier than ten pounds on a daily basis. The Eighth Circuit's admonition in *Marolt v. Alliant Techsystems, Inc.*, seems to apply: "We will not permit ERISA claimants denied

the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." 146 F.3d 617, 620 (8th Cir.1998).

Further, Continental's current contention that Pompe's job did not require lifting more than ten pounds relies on a strained reading of the documents it cites, and is contradicted by other documents in the record that more specifically address the issue. Continental's documents discuss the essential job functions for a Materials Controller as follows: "Load Trucks," "Unload Trucks," "Receiving," "Provide Supplies to Line," "Material Control," and "Shipment Preparation." These descriptions, though vague, are consistent with Pompe's assertion that heavy lifting was required. Continental argues, however, that because "Fork Lift" is handwritten beside some of these items on the form, that all heavy lifting must have been accomplished by such a machine. While it appears from these handwritten additions that a fork lift or crane was used for some of the lifting associated with some of the items, the documents contain no information refuting Pompe's statements that much of the lifting was performed manually.

More important, Hayes' own "Employee Classification Profile" for a Materials Controller states that the job requires lifting 20 pound objects, 25 to 50 repetitions, for between 21 and 40 percent of the day. Doc. AR0094. It further leaves open the possibility that heavier lifting was required, as the boxes for heavier lifting, up to and in excess of 100 pounds, indicate such lifting is required somewhere between "0–20%" of the day. If such lifting was to be done only with a fork lift and never manually, one would expect further clarification in the job description. Finally, Hayes, which has the most knowledge about the requirements of the job, concluded that the ten-pound lifting restriction rendered Pompe unable to perform his position as a Materials Controller. The

Court, therefore, rejects as arbitrary and capricious, Continental's factual contention that Pompe's job did not require him to lift in excess of ten pounds. The administrative record does not contain substantial evidence to support that contention.

Continental also argues that Dr. Keithahn's ten-pound lifting restriction should be disregarded, because on June 19, 1998, during the Plan waiting period, Dr. Keithahn opined that Pompe was not totally disabled. It is true that on a form titled "Disability Benefits Claim Form," when presented with the question "Is patient now totally disabled?" Dr. Keithahn checked the box marked "no." There is no evidence, however, that Dr. Keithahn was aware of the Plan's limited definition of "total disability." This definition does not require that the claimant be totally disabled from *all* jobs, only that the claimant be continuously unable to perform the "substantial and material duties of *his* occupation." Indeed, on the same form where Dr. Keithahn checked the "no" box, Dr. Keithahn wrote "[patient] may work presently light office duty", suggesting his belief that Pompe could not be a Materials's Controller, but could do other work. Accordingly, the Court finds that Dr. Keithahn's opinion that Pompe was not "totally disabled" is ambiguous. Dr. Keithahn's ten-pound lifting restriction, on the other hand, is quite clear and the administrative record is also clear that Pompe's job as a Material's Controller required him to lift in excess of ten pounds. Under these circumstances, it would be arbitrary and capricious to rely solely on this ambiguous statement and ignore the remainder of the evidence.

■ Continental's second justification for denying Pompe's claim is that its policy does not insure potential or future risks. Continental argues that because Pompe's eye bleeding was stabilized during the waiting period, he was not disabled, just at risk of becoming disabled. Dr. Keithahn's lifting restriction, however, does not address a "potential or future risk." The record indicates the risk was both actual and present. While Pompe was stabilized at the time he applied for benefits, he was at risk of rekindling the bleeding in his eyes if he continued in his position, and he had exhausted the efficacy of laser treatment, which had previously been used to stem his bleeding. Thus, Dr. Keithahn ordered him to cease heavy lifting to avert this present danger.

On this issue, the Court finds guidance in *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026 (8th Cir.2000). Herring suffered from arteriosclerotic heart disease ("ASHD"), and had undergone heart bypass surgery. *Id.* at 1028. Although Herring returned to work following his surgery, he began complaining of multiple health related problems, and his physician ultimately opined that Herring's ASHD disabled him from working at his job, or any other that was either strenuous or stressful. *Id.* at 1028–29. The district court granted Herring summary judgment on his claim for disability benefits stating "when we consider the affidavit with what is undisputed in the record, the evidence is such that no reasonable fact finder could return a verdict in Canada Life's favor." *Id.*

Continental argues that a serious health risk is not enough, and that an insured's medical problems must presently prevent job performance. Generally speaking, such an approach would force patients with serious health risks to cripple themselves, or even risk death, in order to be considered disabled. Here, it would require Pompe to violate his physician's orders, until his eyes began to bleed and deteriorate, before he could be considered disabled.

The law is not so harsh. One of the rationales underlying *Herring* is that when a physician restricts a patient from working to avoid aggravating a serious health condition, and there is no evidence challenging the physician's restriction, the patient should be considered disabled. The physician in *Herring* not only opined that Herring was unable to do his job, but

additionally opined that work-related stress would aggravate his condition, and put Herring at risk. *See, id.* at 1029, 1031. This risk is specifically cited by the *Herring* court in support of its decision. *Id.* at 1031. *See also Mutual Ben. Health & Acc. Ass'n v. Francis,* 148 F.2d 590, 596 (8th Cir.1945) ("It is established by the Missouri decisions that one is wholly disabled if he is not able to pursue his occupation without running serious risk of increasing his disability or shortening his life."). Accordingly, the Court finds Continental's argument on this issue unpersuasive.

▇▇▇ On a final note, Continental argues that Pompe's employment as an Emergency Medical Technician ["EMT"] subsequent to his tenure at Hayes demonstrates that he is not disabled. The Court declines to consider this evidence. It is undisputed that this evidence was not before the Plan administrator. Typically, in reviewing a denial of benefits under an employee welfare plan subject to ERISA, "a court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *Conley v. Pitney Bowes,* 176 F.3d 1044, 1049 (8th Cir.1999) (citing *Marolt,* 146 F.3d at 620; *Short v. Central States, S.E. and S.W. Areas Pension Fund,* 729 F.2d 567, 571 (8th Cir.1984)). Where the standard of review is for abuse of discretion, reopening the record is forbidden. *See Brown,* 140 F.3d at 1200; *Cash,* 107 F.3d at 641 ("... review under the deferential standard is limited 'to evidence that was before' the Committee."). Continental has cited no authority to the contrary. Because the Court has determined that abuse of discretion is the proper standard, *Brown* and *Cash* bar consideration of any new evidence.

▇▇ Further, even where *de novo* review is appropriate, the record is not reopened "unless there is good cause to depart from the general rule." *Conley,* 176 F.3d at 1049 (citing *Donatelli,* 992 F.2d at 765). Continental has provided no authority suggesting that good cause exists here for reopening the record. Accordingly, even if the parties were to concede that *de novo* review is appropriate, the Court would be reluctant to reopen the record. The Court, therefore, declines to consider the EMT evidence, as it was not before the Plan administrators when they made their decision.

Having concluded that Continental's decision to deny total disability benefits was arbitrary and capricious, the Court must calculate Pompe's damages. Pompe contends that the 180–day waiting period for total disability benefits ended on December 15, 1998, and that his eligibility expired in April 1999, when he began working again. Pompe thus asserts that he is entitled to one-half of the monthly benefit amount ($1,190.80) for December 15 through December 31, 1998, or $595.40, and the full monthly amount for January through March of 1999. This totals $4,167.80. Neither Defendant has contested this calculation. Accordingly, the Court will order that judgment be entered for Pompe in the amount of $4,167.80 for total disability benefits.

### B. Residual Benefits Claim

Pompe asserts that in addition to his claim for "total disability" benefits, he also is claiming benefits for "residual disability" benefits. Under the Plan, an employee who is disabled "to the extent that the Loss of Salary Ratio is 20% or more," may be entitled to residual disability benefits, even if they are currently employed. Pompe contends that Continental has ignored his claim for residual disability benefits. Continental asserts that Pompe made no such claim prior to filing this lawsuit.

There is no separate claim for residual disability benefits in the administrative record. Pompe notes, however, that the only requirement in the policy for making such a claim is that he submit a general "Disability Benefits Claim Form," which he did. Pompe also notes that in his

March 18, 1999, letter, he specifically inquired as to whether there was coverage in the Plan for "partial disability".

> I am also inquiring as to whether or not there is coverage for "partial disability." I could not determine from the Summary Plan Description if partial disability was an option. As I understand the Summary Plan Description, it defines eligibility for coverage as "any disability,"....

Even though Pompe may have made a claim for residual benefits under the policy, it is clear that the issue of residual benefits was not addressed by Continental and there is no administrative record for the Court to review. The Court, therefore, remands Pompe's residual benefits claim to the Plan administrator for a determination on the merits which will be subject to review by the District Court once the claims process has been completed.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Judgment is entered against Defendants Continental Casualty Co. and Defendant Hayes Wheels International Inc., Company Paid Long Term Disability in the amount of $4,167.80 on Pompe's claim for total disability benefits It is further

ORDERED that Plaintiff's claim for residual disability benefits is REMANDED to the Plan administrator for further consideration. It is further

ORDERED that all other pending motions are DENIED as moot.